143 So.2d 481 (1962)
Bennie Ray HOBBS, Petitioner,
v.
H.G. COCHRAN, Jr., Director, Division of Corrections, Respondent.
No. 31429.
Supreme Court of Florida.
July 27, 1962.
Bennie Ray Hobbs, petitioner, in pro. per.
Richard W. Ervin, Atty. Gen., and George R. Georgieff, Asst. Atty. Gen., for respondent.
THOMAS, Justice.
At the instance of Bennie Ray Hobbs this court issued a writ of habeas corpus directed to H.G. Cochran, Jr., Director of the Division of Corrections, and shortly afterward a return was received from the respondent signed by him and by the Attorney General.
In the petition it was alleged that the prisoner had been sentenced to 20 years for assault with intent to rape a female of the age of 16 years, to 20 years for sodomy per os, to 10 years for false imprisonment and to 10 years for kidnapping without ransom, all sentences to run consecutively. He claimed that he did not have the benefit of counsel and that although he pleaded "guilty by reasons of insanity", he was refused an examination, the trial judge remarking "if there is anything wrong with you `Raiford' [site of the state penitentiary] will take care of it." Parenthetically, this statement attributed to the trial judge in the petition was specifically abandoned by the petitioner during the hearing before the commissioner. It was further averred that the petitioner, upon arrival at the prison, was placed on medication for about four months, then put in the prison hospital for four months when he was declared insane and sent to the state hospital at Chattahoochee for 13 months. At the end of extensive treatment at the *482 latter hospital, which is equipped and staffed for the expert care of those mentally ill, the petitioner was returned to the prison where he has remained.
The petitioner insisted that he had not had the opportunity to talk to a lawyer except five minues he spent with the prosecuting officer during the trial. He asserted that he was tried and convicted in disregard of the rights guaranteed him under the Constitutions of the United States and the State of Florida.
By the return, the allegations of the petition were severally denied, and especially the statement attributed to the trial judge which we have quoted and which the petitioner subsequently withdrew.
The respondent concedes the isolated conversation with the state attorney but says it resulted from a request by the petitioner. In this connection the court minutes show that the state attorney announced in open court that when the petitioner requested and was granted permission to talk to him, the petitioner wished to know what could be done for him at the state prison and expressed the fear that if released he might commit acts similar to those charged to him and stated that it would be better for him to be electrocuted than to be freed to repeat such conduct.
Attached to the return is a report of the Reception, Diagnostic and Classification Center of the Division of Corrections giving in detail the description of the petitioner and the account of the sordid, revolting circumstances upon which the prosecution was based but we have not found on these papers any mark of authentication.
The return contains the flat statement that the petitioner never requested the services of an attorney.
In this state of the case the court designated Honorable Joseph W. Bailey, a judge of the Fourteenth Judicial Circuit, as commissioner to take testimony on the factual issues and to report to the court his findings and recommendations.
In meticulous obedience to the court's order, the commissioner has filed a complete and comprehensive report of the hearing he conducted.
The commissioner concluded that three questions emerged for determination by him. The first related to the jurisdiction of the circuit court to try the petitioner inasmuch as he had made the simple statement in his petition: "A part of my crime was on federal propity [sic] but I was tried by the state." The commissioner found that the offenses were started in a civilian area near the boundary of Eglin military reservation and were continued in a boat on Choctawhatchee Bay, all within the limits of Walton County. Nothing having been shown that civilian authority over the area had been ceded, the commissioner decided that the circuit court for Walton County where the petitioner was arraigned and sentenced had jurisdiction of the cause and we agree that this question was correctly resolved.
The second question which the commissioner thought required an answer involved the legality of the arraignment. In approaching his recommendations he recounted the facts of the incidents resulting in the indictments. The petitioner at the time of the misdeeds charged to him was stimulated by beer and armed with a pistol which gave him false courage and a distorted sense of propriety. "When the cold realization of what he had done penetrated his thinking he became a frightened and remorseful person." He surrendered and after spending a few hours in the Walton County jail was removed to another county for his own safety. Within a few days he was returned to Walton County where the county judge apprised him of the charges against him. Although he thought the county judge, serving as a committing magistrate, was the one who would eventually try him, he seemed to understand his predicament and to realize that punishment awaited him. Then he was removed to another county for safekeeping. Three *483 months later he was returned to Walton County and arraigned without counsel.
The petitioner had had no experience with court procedure. As stated in the return he did not request counsel and he had no money to secure legal services. He was not questioned about his desire for the services of an attorney or his financial ability to pay for them. Nor was he asked about his familiarity with the charges against him or the consequences of his acts. No interrogation with reference to the voluntariness of a plea of guilty took place.
The commissioner, having become convinced by the testimony he heard that at the time of arraignment petitioner was repentant from the realization of the enormity of his crimes and frightened because of his removal twice for safekeeping, concluded that on account of these and the other attendant circumstances, petitioner being without counsel should have been more fully advised of his situation as a defendant, and we are disposed to accept this view. Certainly his only source of legal advice was the state attorney with whom he had consulted but a few minutes although the problems presented by the unusual plea as well as the surrounding circumstances raised intricate questions which required the attention of one trained in the legal profession.
Reaching the third question, relating to the propriety of the proceeding following the plea of guilty by reason of insanity, the commissioner animadverted on the lack of inquiry into petitioner's mental condition in view of his contrite attitude, his extended practice of unnatural sexual activity and his desire for help. There seems to be no doubt that the petitioner was a sex deviate. It will serve no decent purpose to set forth here the steps in his sordid career as a pervert or the revolting facts alleged in the indictments. But from the plea itself and the statements of the petitioner it is obvious that he was abnormal. To what degree is not for this court now to say but there was abundant showing to set in motion an examination into his mental state.
It is plain from the record and from his own admissions that the petitioner had been a pervert for a long period. That he had a pronounced tendency toward sex crimes is abundantly established in the record and that he was dangerous to others was demonstrated by what he did and what he said he did.
The commissioner thought petitioner's condition brought him within the provisions of Sec. 917.12(1), Florida Statutes 1959, F.S.A., where a criminal sexual psychopath is defined as a person not insane or feeble-minded who has suffered at least four months from a mental disorder linked with criminal propensities to commit sex crimes and who may be considered dangerous to others.
The commissioner on this premise concluded that the procedure outlined in the section should have been followed. There is no need here to outline the steps that should have been taken in such instances further than to say that there was a plain notice to the trial judge that the sanity or insanity of the petitioner was an issue and we concur in the commissioner's view that there should have been resort to the procedure outlined in Sec. 909.17 and Chapter 917, Florida Statutes 1959, F.S.A., or Sec. 917.12, supra, or all of them.
We concur in the view of the commissioner that there should have been an inquiry about the petitioner's sanity or insanity not only for the reasons he gives to support it but also because of the state of the record concerning the arraignment. In the first place, according to the court minutes, the petitioner entered the curious plea of "guilty, due to insanity." (Italics supplied.) Nevertheless, the court accepted the plea as an unqualified one of guilty and apparently disregarded the reference to insanity. Furthermore, the state attorney, despite the provisions of Sec. 917.12(2) supra, announced "that he knew of no *484 particular process which he could suggest for a psychiatric examination of the defendant."
Even so the petitioner was, upon the qualified plea, sentenced to 60 years in prison.
We approve the recommendations of the commissioner. The plea is set aside and the judgment and sentence are vacated. The petitioner is remanded to the Circuit Court of the First Judicial Circuit for Walton County for further proceedings in a manner consonant with the views we have expressed.
ROBERTS, C.J., and TERRELL, THORNAL and O'CONNELL, JJ., concur.