343 So.2d 29 (1977)
Benjamin F. HUCKABY, Appellant,
v.
STATE of Florida, Appellee.
No. 47736.
Supreme Court of Florida.
February 17, 1977.
Rehearings Denied March 31, 1977.
*30 Walter B. Dunagan, Daytona Beach, for appellant.
Robert L. Shevin, Atty. Gen., and Charles W. Musgrove, Asst. Atty. Gen., for appellee.
PER CURIAM.
By direct appeal pursuant to Section 921.141(4), Florida Statutes (1975), we have before us for review a conviction of Benjamin Huckaby for the rape of a child under the age of eleven,[1] for which the jury recommended and the trial judge imposed a sentence of death. The facts are essentially uncontroverted; only their legal implications are in dispute. Huckaby admitted at trial that for more than fourteen years he had regularly engaged in sexual intercourse with his three daughters, beginning when the youngest was about six years old. He denied having ever used force, although *31 admitting that the children probably did not understand the nature of his actions at first, and he suggested the entire course of conduct was condoned, possibly even initiated, by his wife and daughters. The children testified that every incident involved the threat of force or actual force. Their testimony, and that of Huckaby's six sons, described a nightmarish family life of brutality, fear and sexual assaults which had continued for about twenty years before any family member gathered the courage to seek help. One neighbor confirmed that Huckaby was a brutal disciplinarian, but other neighbors testified he was merely a very strict parent.
The defense sought to impeach the credibility of the Huckaby children by showing that none of them mentioned the alleged sex acts even to their mother for a number of years, and that no one outside the family was told of these events until they and their mother became angry during divorce proceedings in which a proposed property settlement was not to their liking. There was also an attempt to prove insanity.
The medical evidence is extensive. Huckaby was discharged from the United States Navy in 1944 because of mental illness pre-dating his enlistment. He was classified as a schizoid personality, but was discharged to his own custody because he was not considered a menace to himself or others. During the next thirty years Huckaby established and ran a small but successful construction company, and no public signs of mental disorder appear to have been exhibited at any time.
In 1974 Huckaby was injured in a two-story fall, following which his behavior and physical condition changed. Shortly after the fall a violent incident occurred in his house during which he was stabbed several times by his wife and beaten with a glass bottle and a chair by one of his sons. He was treated at a hospital and admitted to a psychiatric unit after his wife and children reported that he had become irrationally violent. Shortly thereafter he was voluntarily committed to a state mental institution pursuant to The Baker Act, Chapter 394, Florida Statutes (1973). At the commitment hearing, medical reports were introduced which diagnosed his condition as schizophrenic. While under treatment at the state hospital, doctors learned for the first time of Huckaby's sexual acts with his daughters. Medical tests then taken showed an abnormality in Huckaby's brain wave pattern, suggesting a possible organic cause for his anti-social behavior. (At his trial there was testimony that the head injury he suffered a few months earlier when he fell could have caused this abnormality.)
After two months of treatment Huckaby was placed on medication to relieve the possible brain malfunction and released, it being found that he was no longer a menace to society. (The neighbor who testified that Huckaby had been a brutal disciplinarian also stated that upon his return from the state hospital "he was a different man".) It was at this time that divorce proceedings were commenced, and thereafter law enforcement officers were informed of Huckaby's sexual relationship with his daughters. Medical testimony at the preliminary hearing to determine whether Huckaby was competent to stand trial, and at trial, was unanimous that he should be given treatment pursuant to the Child Molester Act, Chapter 801, Florida Statutes (1973), or the Mentally Disordered Sex Offender Act, Chapter 917, Florida Statutes (1973).
There are four major legal issues before us: (1) whether Huckaby could legally be guilty of rape when his acts may also have constituted incest; (2) whether the jury should have been charged on the crime of incest as a lesser included offense; (3) whether the trial court abused its discretion by imposing a criminal penalty rather than ordering confinement for medical treatment pursuant to Chapter 917; and (4) whether the death penalty is appropriate under the facts of this case.[2]
(1) Incest and rape. Huckaby has analyzed the history of incest statutes in *32 Florida and the evolution of case law under them, and he argues that the kinship element of criminal incest is and has always been the determinant which bars criminal prosecution under rape, fornication, adultery and other like statutes, whether the conduct charged includes or does not include force. He argues, in effect, that the legislative and judicial policy regarding non-spousal, intra-family sexual intercourse has eliminated the customary prosecutorial discretion which exists when a course of conduct is punishable under more than one criminal statute. See Fayerweather v. State, 332 So.2d 21 (Fla. 1976).[3] His argument advances an interesting approach to statutory construction which would give each of the violent sex offense statutes an exclusive and independent area of operation, varying on the basis of such factors as force, consent, relationship of victim, and age. We cannot accept Huckaby's assertions, however. Since 1908 this Court has at least implied that the crimes of rape and incest are not mutually exclusive, and that prosecutorial discretion exists when conduct would be criminal under both incest and other statutes. McCaskill v. State, 55 Fla. 117, 45 So. 843 (1908). Of course, the definitions and elements of these crimes have been altered over the years.[4] Nonetheless, this Court has adhered to the multiple-crime, optional prosecution theory applicable to conduct which is incestuous.[5] We reject Huckaby's suggestion that we now should recede from this view.
(2) Lesser included offense. In Brown v. State, 206 So.2d 377 (Fla. 1968), we discussed at length the rules to be followed by the trial courts of this state when instructing a jury on lesser included offenses. Since the crimes of rape and incest are independent of each other, the only arguable basis for giving an instruction on incest would be if this case fell into the so-called "category four" group of cases.
"(4) There should be an instruction on all lesser offenses which are covered by the accusatory pleading and supported by the evidence, even though the major crime charged could otherwise be established without proof of the lesser offense."[6]
This case does not come within this language because the indictment against Huckaby here does not allege the critical element of the crime of incest  requisite consanguinity between the defendant and his victims.
(3) Penalty or confinement. Huckaby asserts that the trial judge abused his discretion in refusing to commit him as a mentally disordered sex offender pursuant to Chapter 917, Florida Statutes (1973).[7] The appellate courts of this state have rarely been called upon to interpret this statute, and this Court has not been required to explain how the trial courts of this state are to apply it within the context of the death penalty statute, Section 921.141, Florida Statutes (1973). We do so now.
A "mentally disordered sex offender" is defined in Section 917.13 as "a person who is not insane but who has a mental disorder and is considered dangerous to others because of a propensity to commit sex offenses." Insofar as it pertains to this case *33 Section 917.14 provides that the trial court "may" suspend Huckaby's sentence and certify him for a special hearing,[8] if (i) there is probable cause to believe he falls within the statutory definition and (ii) his mental disorder has existed for at least the preceding four months. Both of those elements being present in this case, the trial judge had discretion to certify Huckaby if he so chose.
If at the special hearing it is determined that the person is a mentally disordered sex offender, Section 917.19 directs that the court "shall commit the defendant" for treatment. Thereafter reports on the defendant's condition are made to the committing court at least annually, and upon receiving a recommendation for discharge from care from the state institution the court is required to hold a hearing to determine whether the defendant would be a menace to others. If it is found that the defendant is not, his discharge from treatment is ordered and the criminal proceedings then automatically recommence.[9]
Huckaby asserts that the trial judge abused his discretion when he refused to invoke Chapter 917. The state points to Huckaby's release from treatment prior to these criminal charges being lodged as evidence that Huckaby was no longer a menace to society and, therefore not within the statutory definition of "mentally disordered sex offender". The circumstances of this case convince us that the trial judge's denial of certification was not an abuse of discretion.
In his findings on which the death penalty sentence was predicated, the judge expressly found that Huckaby is presently "a danger and menace to society". This finding, of course, was improper in the sentence phase of the trial judge's responsibility.[10] It suggests, however, that the trial judge could have exercised his discretion and granted Huckaby's request for certification under Chapter 917. That he did not do so may reflect the judge's acquaintance with the medical evidence on Huckaby's first commitment and release. He may well have concluded that a re-certification so soon after discharge would serve no useful purpose. In any event, we have no basis on which to conclude that his denial was an abuse of discretion.
(4) Death Sentence. The trial judge here found the existence of three aggravating and no mitigating circumstances. One of the aggravating circumstances is not prescribed in the sentencing statute and must be rejected.[11] His findings that Huckaby's acts created a risk of serious bodily harm to many persons, and that they were heinous, atrocious and cruel, are supported by the record. As to the first, he apparently made sincere threats on the lives of his nine children and wife over the course of many years, and he in fact caused them bodily harm from beatings and other forms of wanton cruelty. (We note that these events all centered around his sexual aberrations, however.) As to the second, the record also bespeaks cruelty enough to his children to sustain the judge's finding on that point.
The trial judge ignored every aspect of the medical testimony in this case when he found that no mitigating circumstances existed. There was almost total agreement on Huckaby's mental illness and its controlling influence on him. Although the defense was unable to prove legal insanity, it amply showed that Huckaby's mental illness was a motivating factor in the commission of the crimes for which he was convicted. Our review of the record shows that the capital felony involved in this case was committed while Huckaby was under the *34 influence of extreme mental or emotional disturbance, and that while he may have comprehended the difference between right and wrong his capacity to appreciate the criminality of his conduct and to conform it to the law was substantially impaired. These findings constitute two mitigating circumstances which should have been weighed in determining his sentence. It is our view, moreover, that these mitigating circumstances outweigh the aggravating circumstances in this case although the circumstances on each side are equal in number. As we stated in State v. Dixon,[12]
"It must be emphasized that the procedure to be followed by the trial judges and juries is not a mere counting process of X number of aggravating circumstances and Y number of mitigating circumstances, but rather a reasoned judgment as to what factual situations require the imposition of death and which can be satisfied by life imprisonment in light of the totality of the circumstances present."
Our decision here is based on the causal relationship between the mitigating and aggravating circumstances. The heinous and atrocious manner in which this crime was perpetrated, and the harm to which the members of Huckaby's family were exposed, were the direct consequence of his mental illness, so far as the record reveals.
For these reasons, the judgments of guilt entered by the circuit court as to all six counts are affirmed, and the life sentences imposed for five of Huckaby's convictions are affirmed. The sentence of death is vacated, however, and this case is remanded to the circuit court with directions to enter a sentence of life imprisonment on the sixth count. For the reason expressed in Anderson v. State, 267 So.2d 8 (Fla. 1972), it is not necessary to return Huckaby to the trial court for resentencing.
It is so ordered.
OVERTON, C.J., and ADKINS, BOYD, SUNDBERG, HATCHETT and ROBERTS (Retired), JJ., concur.
ENGLAND, J., concurs in part and dissents in part with an opinion.
ENGLAND, Justice, concurring in part and dissenting in part.
I concur in all phrases of the Court's decision except that relating to the non-utilization of Chapter 917.
Wherever there has appeared in the past an evident need and a presumptive basis to use the treatment facilities of the state for persons charged with or convicted of abnormal sexual behavior, we have held that the trial judges of this state should utilize the statutory procedures for that purpose. See Hobbs v. Cochran, 143 So.2d 481 (Fla. 1962) (dealing with the predecessor of the present Chapter 917); Dorman v. State, 263 So.2d 207 (Fla. 1973), later reinforced as to this point at 279 So.2d 854 (Fla. 1973). And see Dean v. State, 265 So.2d 15 (Fla. 1972), cert. denied, 410 U.S. 958, 93 S.Ct. 1426, 35 L.Ed.2d 692 (1973), finding no constitutional infirmity in using Chapter 917 after conviction for the same capital offense of which Huckaby was convicted  rape. The clear import of those decisions is that, despite the permissive language of the statute, a trial judge has an affirmative duty to utilize the procedures provided in Chapter 917 if there are apparent indications that its provisions might be applicable in a given case. Since the criteria for an invocation of Chapter 917 were present in this case, I would hold that the trial judge abused his discretion in refusing to schedule a special hearing under Chapter 917.
Although it was not done in this case it seems to me preferable for trial judges to schedule a certification hearing under Chapter 917 before the sentencing trial in capital cases. Section 917.14(1) indicates that the court may either "adjourn the trial or suspend the sentence" for a certification hearing.[1] Both the Legislature and this *35 Court have recognized that "death is a unique punishment in its finality and its total rejection of the possibility of rehabilitation."[2] In order to limit that penalty to only those persons who have committed the most aggravated capital offenses, the Legislature in Section 921.141 has specifically listed the factors to be considered in sentencing. Two of the enumerated mitigating circumstances relate to the defendant's mental health.[3] The delicate system overlaid on any sentence of death would be seriously disrupted if the jury's recommendation or the judge's sentence were made without full knowledge regarding the defendant's psychiatric status, including evidence that the defendant had been adjudged a mentally disordered sex offender, confined for his illness and certified back to the court as having been cured by a program of professional treatment. A delayed sentence proceeding under Section 921.141 thus serves both the purposes of Chapter 917  treatment rather than confinement  and of the death penalty statute. It provides one more way we can be certain that "the trial court's sentencing discretion is guided and channeled by a system that focuses on the circumstances of each individual homicide and individual defendant in deciding whether the death penalty is to be imposed." Proffitt v. Florida, 428 U.S. 242, 258, 96 S.Ct. 2960, 2969, 49 L.Ed.2d 913, 926 (1976).[4]
NOTES
[1] The crime for which Huckaby has been convicted and sentenced is described in Section 794.01(1), Fla. Stat. (1973). His convictions on five other counts for the same or related crimes resulted in life sentences which ordinarily would be reviewable in the district court of appeals. Both Huckaby and the state urge us to review all six convictions and sentences, however. We agree to do so. All six convictions arose from the same jury trial, which was followed by one advisory sentence proceeding. We are required to review the entire record of both proceedings to sustain or reverse the one conviction and attendant death sentence. Obviously we will avoid significant additional judicial effort by accepting the appeal as to all six convictions and sentences.
[2] Other issues raised on this appeal are either a facet of these four or are devoid of merit.
[3] Huckaby does not suggest that the language of either the rape or incest statute expressly forbids an election between them by the state. cf. Wilson v. State, 50 Fla. 164, 39 So. 471 (1905).
[4] At the time of Huckaby's indictment the applicable statutes were Section 794.01(1), Fla. Stat. (1973), as to rape, and Section 741.22, Fla. Stat. (1973), as to incest. This latter statute was repealed by § 66, Ch. 74-383, Laws of Florida, but now appears in altered form as Section 826.04, Fla. Stat. (1975).
[5] Huckaby cites several cases in which incest was charged for conduct over a course of years. He cites none in which either a rape or incest charge was held to have barred a charge on the other ground.
[6] 206 So.2d at 384.
[7] Although it has been argued that Huckaby should have been committed for treatment pursuant to the Child Molester Act, Chapter 801, Fla. Stat. (1973), that Act does not apply when the crime charged or proved is rape. Section 801.041, Fla. Stat. (1973).
[8] This hearing is civil in nature. Section 917.24, Fla. Stat. (1973).
[9] Section 917.20, Fla. Stat. (1973).
[10] See note 11 below.
[11] The trial judge found that Huckaby had a propensity to commit rape, and therefore the very fact that he was alive would create risk of harm to many persons and menace society. This attempt to predict future conduct is without relation to any statutory aggravating circumstance, and must be stricken. Cooper v. State, 336 So.2d 1133 (Fla. 1976).
[12] 283 So.2d 1, 10 (Fla. 1973).
[1] Under 1974 legislative amendments it is no longer possible to adjourn a trial at any time in order to utilize Chapter 917. Only post-conviction proceedings are now authorized. Ch. 74-379, §§ 3, 4, Laws of Florida. This would not, however, prevent the special hearing between a conviction and the separate advisory hearing on sentencing.
[2] State v. Dixon, 283 So.2d 1, 7 (Fla. 1973).
[3] Sections 921.141(6)(b) and (f), Fla. Stat. (1973).
[4] In most cases this sequence will result in the sentencing hearing being held before a jury specially impaneled for that purpose, as now authorized by Section 921.141(1), Fla. Stat. (1975). See Messer v. State, 330 So.2d 137 (Fla. 1976). Sentence review would be available here. Section 921.141(4), Fla. Stat. (1975). Review of the original conviction by the district courts of appeal would be immediate, of course, to avoid the possibility of reversal many years (depending on the length of treatment) after the case was prosecuted.