366 So.2d 387 (1978)
William Horace SHUE, Jr., Appellant,
v.
STATE of Florida, Appellee.
No. 51235.
Supreme Court of Florida.
December 7, 1978.
*388 Theodore E. Mack, Asst. Public Defender, Tallahassee, for appellant.
Robert L. Shevin, Atty. Gen. and A.S. Johnston, Asst. Atty. Gen., Tallahassee, for appellee.
PER CURIAM.
The appellant was tried before a jury and convicted of two counts of sexual battery, committed upon two girls eleven years of age or younger in violation of Section 794.011(2), Florida Statutes. The Court is here reviewing the conviction and the imposition of a sentence of death by electrocution. Our jurisdiction is authorized by Article V, Section 3(b)(1), Florida Constitution.
On Thursday, June 12, 1975, at approximately seven o'clock, P.M., the two victims of the crimes charged in this case, then being eleven and nine years old, were walking along a footpath in a wooded area near their home in Marion County. As they emerged from the woods to proceed towards home along a roadway, they were accosted by a man who ordered them back into the wooded area and raped them both.
Appellant was positively identified at trial by one of the girls as their attacker. Corroboration of this was provided by testimony as to the appellant's identification through photographic, in-person, and voice-identification "lineups."
The young victims led police investigators to the scene of the crime. Expert testimony established that appellant's fingerprint was on a piece of cellophane wrapping paper found there. Also found was a piece of paper packaging material linked by reasonable inference to the cellophane. There was evidence from which the jury could infer that the cellophane and the cardboard came from a package of anesthetic ointment that was in the appellant's possession at the time of the assault. An unopened package of the same product was found in appellant's home.
The appellant had worn a full beard for months, at least, before the crime, and removed it on the day following. The two girls described their attacker as having had such a beard. When shown at trial the appellant's driver's license photograph, in which he was bearded, one of the girls testified that it was a picture of their assailant.
The jury had ample competent evidence upon which to base a verdict of guilty on both counts.
In the sentencing portion of the trial, the court and the jury were presented with testimony as to the appellant's criminal record. It appears that appellant was convicted in North Carolina in 1968 of indecent exposure to some minor females. In Mississippi in 1972 he was convicted of disorderly conduct based on a complaint of "attempted seduction" of a minor female. In Florida in 1970 he was convicted of arson, and testified that his perpetration of the acts involved there arose out of a dispute with a former employer over unpaid wages. After his arrest for the crimes at issue here, he escaped from the Marion County jail, and in 1976 was convicted in Iowa of the crime of rape.
*389 There was also testimony concerning the appellant's upbringing, family background, and social life. His childhood, as it was described, was one of brutality and deprivation. His older sister testified that she was repeatedly abused and sexually assaulted during childhood by their father.
The jury recommended that the appellant be sentenced to life imprisonment. Contrary to the recommendation the judge imposed death as the sentence. He found that two of the aggravating circumstances listed in our capital felony sentencing law, Section 921.141, Florida Statutes, were present: that the appellant had previously been convicted of a felony involving violence or the threat of violence, and that the rapes were especially heinous, atrocious, and cruel. He found further that there were no mitigating circumstances.
The appellant contends that the sentence imposed upon him for these crimes violates the guarantee of the Eighth Amendment to the United States Constitution against cruel and unusual punishment. He argues that the decision of the United States Supreme Court in Coker v. Georgia, 433 U.S. 584, 97 S.Ct. 2861, 53 L.Ed.2d 982 (1977), stands for the proposition that a punishment of death for the crime of rape where there has been no taking of human life is disproportionate to the crime and therefore unconstitutional. The Court held that the death penalty under such circumstances is grossly disproportionate and excessive punishment, but limited its holding to the facts of that case in which the victim was an adult woman. The opinion of the Court placed great emphasis, however, on the recent national trend away from exacting the ultimate punishment for the crime of rape. Today only Florida and Mississippi have statutes in force authorizing the death penalty for rape, and both States limit its application to the case of rape of a child by an adult.[*]
These recent events evidencing the attitudes of state legislatures and sentencing juries do not wholly determine this controversy, for the Constitution contemplates that in the end our own judgment will be brought to bear on the question of the acceptability of the death penalty under the Eighth Amendment. Nevertheless, the legislative rejection of capital punishment for rape strongly confirms our own judgment, which is that death is indeed a disproportionate penalty for the crime of raping an adult woman. Id. at 597, 97 S.Ct. at 2868.
The question of the permissibility of death as the punishment for child rape will, undoubtedly and unfortunately, be presented to this Court again, unless the United States Supreme Court decides it first. We will not decide it now, however, because there are two grounds under our own decisions for vacating appellant's sentence and ordering a sentence of life imprisonment. The facts do not warrant imposition of a sentence of death in the face of the jury's recommendation. And under our decision in Purdy v. State, 343 So.2d 4 (Fla. 1977), as will be explained below, upholding the death sentence in this case would be to allow cruel and unusual punishment.
In Huckaby v. State, 343 So.2d 29 (Fla. 1977), the appellant had been sentenced to death for rape of a child under the age of eleven. We concluded that the appellant's long history of sexual abuse of his daughters demonstrated the existence of a mental illness which, although not rising to the level of legal insanity, nonetheless showed an impairment of the appellant's capacity to appreciate the criminality of his conduct. This conclusion and our finding in the record of evidence of extreme emotional disturbance constituted factors in mitigation. Even though the jury recommended a sentence of death, we held that these two mitigating circumstances should have been found and considered by the sentencing judge and that they constituted sufficient ground for ordering the sentence reduced to life imprisonment.
*390 A defendant's criminal record might be thought to be relevant to sentencing only as an aggravating circumstance. We mention Huckaby only to indicate that there is authority for the proposition that an offender's history and background may be deemed relevant to the existence of mitigating factors such as that of substantial impairment of capacity to appreciate the criminality of one's conduct or to conform to the requirements of law. Section 921.141(6)(f), Florida Statutes (1977); cf. Miller v. State, 332 So.2d 65 (Fla. 1976) (depriving jury of psychiatric testimony relevant to mitigation rendered death sentence improper).
While appellant's history here does not approach the extreme character of the appellant's in Huckaby, which this Court characterized as indicating mental illness, nevertheless his record may have been a factor in the jury's decision to recommend life imprisonment rather than death. That there was information in evidence providing an arguable basis upon which the jury might have grounded such a recommendation  we cannot know with certainty what its reasons were  becomes significant in light of the decisions of this Court relating to the status and treatment of jury recommendations under the capital felony sentencing statute.
A jury recommendation is to receive great deference, both from the sentencing judge and the reviewing appellate court. McCaskill v. State, 344 So.2d 1276 (Fla. 1977); Lamadline v. State, 303 So.2d 17 (Fla. 1974). In Tedder v. State, 322 So.2d 908 (Fla. 1975), we said:
A jury recommendation under our trifurcated death penalty statute should be given great weight. In order to sustain a sentence of death following a jury recommendation of life, the facts suggesting a sentence of death should be so clear and convincing that virtually no reasonable person could differ.
It is impossible to say that there was no reasonable basis for the jury to have concluded that some mitigating circumstances existed sufficient to outweigh the aggravating circumstances.
The aggravating circumstance, that a capital felony was "especially heinous, atrocious, or cruel," applies to
those capital crimes where the actual commission of the capital felony was accompanied by such additional acts as to set the crime apart from the norm of capital felonies  the conscienceless or pitiless crime which is unnecessarily torturous to the victim.
State v. Dixon, 283 So.2d 1, 9 (Fla. 1973). This principle of our capital felony sentencing law was applied to the felony of child rape in Prudy v. State, 343 So.2d 4 (Fla. 1977). There was a finding by the judge that the rape of the seven-year-old victim was especially heinous, atrocious, and cruel. We held, however, that since there was nothing shown to set the crime apart from the normal or typical violation of the statute, to affirm the sentence of death would amount to giving approval to a mandatory sentence of death for every person convicted of this crime. The crime itself is always so reprehensible as to cause outrage, but constitutional principles will not permit the establishment of a mandatory death sentence. Roberts v. Louisiana, 428 U.S. 325, 96 S.Ct. 3001, 49 L.Ed.2d 974 (1976); Woodson v. North Carolina, 428 U.S. 280, 96 S.Ct. 2978, 49 L.Ed.2d 944 (1976). As in the present case, there was no showing of extraordinary cruelty or of violence or injury beyond that which is necessarily attendant upon the rape of a child. The sentence was reduced to life imprisonment.
Rape is a loathsome crime anywhere, anytime, against anyone. For centuries under Anglo-American law it has been widely thought to merit the maximum penalty. The rape of children is revolting to the minds of all civilized persons. The people through the Legislature have authorized electrocution for this crime. But with all of the foregoing considerations in mind we find that the imposition of the penalty of death in this case cannot be upheld.
The jury returned two verdicts, finding appellant guilty of two capital felonies. The trial court adjudicated appellant guilty on both counts of the indictment. Then, *391 the jury rendered an advisory sentence of life imprisonment, and the judge imposed a sentence of death. It was the obvious purpose of the jury to spare appellant from the electric chair. Although both jury and judge referred to only one and not two sentences, it was their obvious intent to punish appellant for both crimes.
The judgments of conviction on both counts are affirmed and the cause is remanded to the trial court with directions to vacate the sentence of death and to impose two separate sentences of life imprisonment, in accordance with Section 775.082(1), Florida Statutes (1973).
It is so ordered.
ENGLAND, C.J., and ADKINS, BOYD, OVERTON and HATCHETT, JJ., concur.
NOTES
[*] §§ 794.011(2), 775.082(1), 921.141, Fla. Stat. (1977); Miss. Code Ann. § 97-3-65 (Supp. 1977). For the opinion of the Supreme Court of Mississippi that the Coker decision leaves a state free to punish by death the rape of a child by an adult, see Upshaw v. State, 350 So.2d 1358 (Miss. 1977).