538 So.2d 164 (1988)
STATE ex rel. Ernest BUSBY
v.
Hilton BUTLER, Warden.
No. 88-KP-1872.
Supreme Court of Louisiana.
December 12, 1988.
*165 J. Michael Small, Alexandria, James Dorsey, Marian G. Heaney, J. Thomas Vitt, Dorsey & Whitney, Minneapolis, Minn., for applicant.
William J. Guste, Jr., Atty. Gen., William E. Tilley, Dist. Atty., Edwin Cabra, Asst. Dist. Atty., for respondent.
COLE, Justice.
On February 15, 1984, Ernest Busby was convicted of first degree murder in violation of La.R.S. 14:30.[1] A sentencing hearing *166 was conducted before the same jury that determined the issue of guilt. The jury unanimously recommended a sentence of death be imposed on defendant. The trial judge sentenced defendant to death in accord with the jury recommendation. On direct appeal, this Court affirmed both the conviction and sentence. State v. Ernest Busby, 464 So.2d 262 (La.1985), cert. denied, 474 U.S. 873, 106 S.Ct. 196, 88 L.Ed. 2d 165 (1985), reh'g denied, 474 U.S. 1015, 106 S.Ct. 550, 88 L.Ed.2d 478 (1985). Defendant subsequently petitioned for and was granted an evidentiary hearing on claims of entitlement to post-conviction relief. On June 1, 1988, the district court denied relief. This Court granted writs to review that ruling.
In his post-conviction application, defendant relied on eleven assignments of error. Following the evidentiary hearing held by the trial court, defense counsel consolidated those assignments and in his brief to this Court, petitioner now raises seven assignments of error. Several of these allege ineffective assistance of counsel at the guilt and sentencing phases of trial. These assignments are as follows:
1. Petitioner was denied effective assistance of counsel and constructively denied his right to counsel, in violation of the Sixth, Eighth and Fourteenth amendments to the U.S. Constitution.
2. Prosecutor's misconduct made petitioner's trial fundamentally unfair, in violation of his rights under the Eighth and Fourteenth Amendments to the Constitution.
3. Petitioner's Eighth and Fourteenth Amendment rights were violated by the sentencing jury's consideration of two invalid aggravating circumstances.
4. Petitioner was unconstitutionally denied his right to appointment of a qualified expert in violation of the Sixth, Eighth, and Fourteenth Amendments to the Constitution.
5. Petitioner's statement was unconstitutionally obtained and used against him at trial, in violation of his rights under the Fifth, Sixth, and Fourteenth Amendments.
6. The trial court erred in denying an evidentiary hearing on issues other than ineffective assistance of counsel at the sentencing phase.
7. The cumulative effect of the violations of petitioner's rights was in itself a violation of his constitutional rights.
Of these assignments, we find only the assignment of error dealing with ineffective assistance of counsel at the sentencing phase of trial to have merit. Because petitioner did not receive the effective assistance of counsel to which he was entitled under the Constitution, the sentence of death must be vacated and the case remanded to the trial court for a new sentencing hearing.

FACTS
At trial, the state proved petitioner Busby deliberately shot, robbed, and killed 39-year-old John Reeves, a retired military policeman and father of three. Busby gave a taped confession and later testified concerning the details of the murder.
In his confession, Busby said his girlfriend told him "somebody" reported to her that Busby had said she "had been running around acting like a whore...." Busby figured Reeves, an acquaintance, had to have been the one who repeated the remark since he was the one to whom Busby had said this. Petitioner explained Reeves had violated the code Busby lived by which provided, "I don't bother nobody and they don't bother me. I don't bother nobody's business and nobody gets in my business. If they get in my business, I don't allow them to get back in it." Busby also confided to a friend that he intended to rob and shoot Reeves.
The next day was December 2, and Busby invited Reeves to go squirrel hunting in the woods near Leesville, not far from the *167 3B's Trailer Park where both men lived. While Reeves was walking about 12 feet ahead of him, Busby raised the .20 gauge single-shot shotgun he was carrying and fired it into Reeves' back. Busby, who was 24 at the time, smoked a cigarette and reloaded the gun in case Reeves was not dead. As Reeves lay there gasping, "I started to tell him that I didn't mean to do it. I don't know why I did it. I just shot him."
After feeling for a pulse and finding none, Busby dragged Reeves' body about thirty feet, up along a creek, where he covered the body with leaves and twigs in an effort to hide it. After he said a prayer over the body, Busby took Reeves' watch as well as a wallet containing $150. He threw the watch towards the creek but put the wallet in his back pocket. Later he took the money and threw the wallet away.
Busby returned to the trailer park and got the keys to Reeves' 1974 Plymouth station wagon. He took the car and went out for a couple of beers, then later that afternoon picked up and brought home Reeves' 16-year-old daughter and her child. In the evening, he took some friends out to celebrate the birthday of one of them. The next morning, realizing he had "better leave town," he packed his things and drove the station wagon to his sister's house in Shreveport where he stayed until December 5, when he was arrested by Caddo Parish police officers. He was taken back to Vernon Parish where he confessed to the crime and was subsequently indicted by grand jury for first degree murder.

ASSIGNMENT OF ERROR NUMBER ONE
In his first assignment of error, petitioner argues he received ineffective assistance of counsel in both the guilt and the sentencing phases of his trial. During the guilt phase, petitioner claims he did not receive a fair trial because trial counsel failed to question jurors at voir dire about their attitudes toward the death penalty. In addition, petitioner alleges trial counsel did not prepare for or present an insanity defense, even though petitioner stood trial on the dual plea of not guilty and not guilty by reason of insanity.
In respect to the sentencing phase of trial, petitioner argues trial counsel failed to investigate and present mitigating evidence of petitioner's history of mental and emotional problems and testimony by his family which might have persuaded jurors to vote for life imprisonment rather than death. He also argues counsel's closing argument to the jury at the sentencing phase was inadequate under State v. Myles, 389 So.2d 12 (La.1979), reh'g granted, 389 So.2d 12 (La.1980).

Analysis
The process by which we analyze a claim of ineffective assistance of counsel is governed by Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), reh'g denied, 467 U.S. 1267, 104 S.Ct. 3562, 82 L.Ed.2d 864 (1984). The basic principle in such an analysis is that judicial scrutiny of counsel's performance must be highly deferential since it is "all too tempting" to second-guess counsel's assistance after an adverse sentence and "all too easy" for a court examining an unsuccessful defense to conclude that an act or omission of counsel was unreasonable. Id. 466 U.S. at 690, 104 S.Ct. at 2066. Therefore, it is only if counsel's acts or omissions were outside the wide range of professionally competent assistance that he will be deemed to have been ineffective. Middleton v. Dugger, 849 F.2d 491, 493 (11th Cir.1988).
The underlying purpose of requiring effective assistance of counsel is to ensure a fair trial. The benchmark, therefore, for judging any such claim must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result. Strickland, 466 U.S. at 686, 104 S.Ct. at 2063. A convicted defendant who claims error because of his trial counsel's ineffectiveness must thus establish two separate elements in order to succeed:
First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made *168 errors so serious that counsel was not functioning as the `counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.
Id.
The rule, then, is that even if a defendant can prove counsel error, he still must prove actual prejudice before relief is granted. Only if petitioner shows both error and prejudice will his conviction or sentence be found unreliable and set aside. Furthermore, it is unnecessary to address the issues of both counsel's performance and prejudice to the defendant if petitioner makes an inadequate showing on one component. Id. at 697, 104 S.Ct. at 2069.

I.

COUNSEL'S PERFORMANCE
A. Guilt Phase
We first consider the issue of whether counsel's assistance during the guilt phase of trial was ineffective. Petitioner argues his appointed trial counsel was ineffective because he failed to put questions on capital punishment to prospective jurors. He argues additional error in counsel's failure to present an insanity defense and failure to obtain an independent psychiatric opinion to use at pretrial, guilt, and penalty phases.
Our reading of the voir dire transcript shows that although counsel's examination was hardly an in-depth exploration of prospective jurors' views on the death penalty, he did question several persons who were ultimately not selected to serve as jurors. Furthermore, the transcript shows counsel put in the record his intent to select a jury favorable to his client and one least likely to vote for death, despite his client, Busby's, seeming opposition to that course of action.
Secondly, petitioner argues trial counsel erred in failing to present an insanity defense. We do not address whether such failure was error for it is clear from the record such a defense would not have succeeded. Counsel requested appointment of a pretrial sanity commission examination, which found Busby competent to proceed and sane at commission of the offense. Moreover, expert testimony presented by Busby at the 1987 evidentiary hearing showed even the most favorable interpretation of his psychiatric records would not have shown him insane under Louisiana law. La.R.S. 14:14; La.C.Cr.P. arts. 650-658.[2]
Thus, even though evidence of Busby's mental problems would have been admissible at the guilt phase of trial, such evidence could not have supported a verdict of not guilty by reason of insanity. This fact, considered along with the petitioner's uncontroverted admission of guilt, leads to the conclusion that production of this evidence would not have changed the outcome of the guilt phase. Petitioner, therefore, has failed to show prejudice as regards his conviction and allegations of possible errors by counsel in that portion of trial are irrelevant.
B. Sentencing Phase
We now consider whether the assistance of counsel petitioner received at the sentencing phase of trial was ineffective. A capital sentencing proceeding is "sufficiently like a trial in its adversarial format and in the existence of standards for decision" *169 that counsel's role in the two proceedings is comparable, that is "to ensure that the adversarial testing process works to produce a just result under the standards governing decision." Strickland, 466 U.S. at 686, 687, 104 S.Ct. at 2063, 2064.
The issues presented are whether an attorney has the duty to investigate and present mitigating evidence at the sentencing phase of a capital case, whether an attorney has the duty to make reasonable efforts to contact family members in preparing for the sentencing phase of a capital case, and whether the closing argument in this case fell below the standard established in State v. Myles, 389 So.2d 12 (La. 1980) (on rehearing).
An attorney has a duty to conduct a reasonable investigation, including an investigation of the defendant's background, for possible mitigating evidence. Thompson v. Wainwright, 787 F.2d 1447, 1451 (11th Cir.1986). The Louisiana death sentencing statute requires the jury to consider evidence of mitigating circumstances before imposing the death penalty. La.C.Cr. P. art. 905.3; State v. Jones, 474 So.2d 919, 932 (La.1985), cert. denied, 476 U.S. 1178, 106 S.Ct. 2906, 90 L.Ed.2d 992 reh'g denied, 478 U.S. 1032, 107 S.Ct. 13, 92 L.Ed. 2d 768 (1986). La.C.Cr.P. art. 905.3 provides:
A sentence of death shall not be imposed unless the jury finds beyond a reasonable doubt that at least one statutory aggravating circumstance exists and, after consideration of any mitigating circumstances, recommends that the sentence of death be imposed....
The Louisiana statute delineating which circumstances can be considered as mitigating is La.C.Cr.P. art. 905.5, which provides:
The following shall be considered mitigating circumstances:
. . . .
(e) At the time of the offense the capacity of the offender to appreciate the criminality of his conduct or to conform his conduct to the requirements of law was impaired as a result of mental disease or defect or intoxication;
. . . .
(h) Any other relevant mitigating circumstance.
We must, thus, determine whether a reasonable investigation would have uncovered mitigating evidence to be put to the jury in the penalty phase of the trial. If such was the case, then we must inquire whether failure to put this evidence before the jury was the result of strategy by counsel. Where mitigating evidence is not presented to the jury because of counsel's tactical choice, petitioner must overcome the strong presumption that, under the circumstances, the challenged action "might be considered sound trial strategy." Strickland, 466 U.S. at 690, 104 S.Ct. at 2066, citing Michel v. Louisiana, 350 U.S. 91, 101, 76 S.Ct. 158, 164, 100 L.Ed. 83 (1955).
On the other hand, if the failure to present mitigating evidence was not a tactical decision but reflects failure by counsel to adequately advocate his client's cause, defendant still must have suffered actual prejudice due to the ineffectiveness of his counsel before relief will be granted.

1. Reasonable Investigation
Petitioner Busby argues counsel erred in not presenting evidence of a significant history of emotional and mental problems, well-documented over the twelve years of his life preceding the murder of Reeves. He also argues trial counsel should have contacted family members whose affidavits, showing they would have pleaded to the jury that Busby's life be spared, were presented at the evidentiary hearing. Finally, petitioner contends counsel's performance at the sentencing phase of trial was inadequate because he failed to make an opening statement, failed to present any evidence, and delivered a closing statement which hurt rather than helped his client's cause. These factors are necessarily related to the lack of mitigating evidence due to a failure to investigate.
Trial counsel conducted no investigation of mitigating evidence, despite having been told by Busby that he had been in numerous institutions. An examination of pleadings filed in the application for pretrial *170 appointment of a sanity commission leads us to believe counsel was aware of his client's mental problems and emotional disturbance. In that application, counsel averred the defendant had been "suffering from mental infirmities for the past eleven years" and had "previously been hospitalized in the Louisiana State Mental Hospital at Mandeville, Lousisiana and has been treated continuously since the age of thirteen for mental problems."
At the 1987 evidentiary hearing, defendant presented expert testimony by Dr. Joe B. Hayes, an associate professor of psychiatry at L.S.U. Medical School in Shreveport and private practitioner specializing in forensic psychiatry, an area of study which involves the interrelationship between criminality and psychiatry. The records examined by Dr. Hayes revealed petitioner was first confined for emotional difficulties at age 12 after he called an ambulance to take him to the hospital because he was going to commit suicide with a butcher knife he was holding to his throat.
Dr. Hayes testified after reviewing more than 700 pages of medical records compiled during the subsequent 12 years when defendant was committed to a series of institutions. Records from Southeast Louisiana State Hospital, Dardin Hill Ranch School in Texas, the California Youth Authority, and Wade, Dixon, and Hunt Correctional Centers, showed defendant suffered from suicidal tendencies, death wishes, "acting out" behavior, and unsocialized aggression. His psychological studies during these periods of confinement showed he had a low tolerance for frustration, could be suddenly explosive, and was unusually isolated from contact with other human beings. At one point, drug therapy was administered in an effort to change his behavior. Petitioner himself testified to having committed numerous crimes and admitted he was considered "incorrigible."
The conclusion Dr. Hayes reached from these records and from interviews with Busby's family was that, long before the 1983 murder, petitioner had an antisocial personality disorder, a mental disease or defect which impaired his ability to appreciate the criminality of his conduct and conform his conduct to the requirements of law. The same conclusion was reached by Dr. Albert E. Fant, directer of the adolescent therapeutic community program at River Oaks Hospital in Harahan, Louisiana.
In an affidavit, Dr. Fant, who also reviewed records of Busby's medical and family history, testified petitioner has a documented history of a psychiatric disorder going back to early childhood and that these documents showed a high level of family conflict beginning in those early years. Dr. Fant also said it was his professional opinion that Busby's condition is a mental disease or defect within the meaning of La.C.Cr.P. art. 905.5(e).
All the documentary evidence relied on by Drs. Hayes and Fant was in existence at the time of trial and could have been discovered from a reasonably competent investigation into Busby's background. With authorization from his client, counsel could have obtained these records and considered them for introduction at trial.
In addition, the record shows other mitigating testimony was available for the sentencing phase. Members of Busby's family, including his father, mother and paternal grandmother, prepared statements in which they said they would have pled with the jury to spare petitioner's life, had they been contacted by Busby's trial counsel or called to testify. Counsel claimed to have made five or six unsuccessful attempts to reach the family home in Shreveport by phone before he gave up. While we do not question the assertion Busby's family knew of the murder and trial, the fact they did not approach counsel and volunteer to testify is explainable. Attorney Welborn Jack, Jr., counsel experienced in representing defendants in capital cases who was qualified as an expert witness at the evidentiary hearing, said family members are often so "mortified" that they are reluctant to appear when one of their members is on trial in a death case. Once contacted, however, they often testify willingly and with deep feeling in an effort to help the jury see the troubled individual before them as a human being whose life has value.
*171 Testimony by Busby's family clearly could have served such a purpose. The record showed them to be a working-class family, people whom attorney Jack noted the jury could relate to. Busby's mother, a school teacher, and his father, a mechanic, described to Jack the pain of raising a child who was difficult from birth, of having tried and failed to take a child who was "out of sync" and to make him like other children. We believe this evidence was relevant and could have been considered by the jury under art. 905.5(h).

2. Tactical Decision
We now determine whether trial counsel had a tactical reason for his level of performance in the sentencing phase of trial. Strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. Burger v. Kemp, 483 U.S. 776, 107 S.Ct. 3114, 3126, 97 L.Ed.2d 638 (1987) citing Strickland v. Washington, 466 U.S. at 690-91, 104 S.Ct. at 2066. We must, therefore, ascertain whether strategic reasons can explain trial counsel's failure to investigate Busby's background or explain the level of representation delivered by counsel at sentencing. In this case, there are a number of factors which lead us to believe trial counsel's decisions and actions were not based on strategy.
First, despite having pled petitioner's ongoing emotional problems in a pretrial motion, counsel did not obtain either a medical release for those records or the records themselves. Nor did he persist in contacting petitioner's family members or in interviewing them. As attorney Welborn Jack, Jr. testified, preparation for a capital case can be compared to preparation for a personal injury suit in that a lawyer can only perform adequately at trial if he has obtained all the relevant information concerning his case. In a capital case, such relevant information encompasses reasonable knowledge of the defendant's emotional and family history.
Counsel himself appeared unable to provide a strategic reason for not presenting testimony concerning Busby's emotional and family history. He said at the evidentiary hearing, "I would have loved to have had the doctor [Hayes] that testified this morning and say what he says. I'd have loved to have had the parents to come up and say, you know, he was the best son we've ever had, but I didn't have that."
Second, Welborn Jack, Jr. and Michelle Fournet, attorneys who have handled numerous murder and capital cases, read the trial transcripts and medical evidence and talked with the Busby family. They testified trial counsel's performance fell below the standard of reasonably competent assistance for the area in failing to conduct sufficient background investigation in petitioner's case to discover possible mitigating evidence. Both testified there could be no strategic reason for failing to investigate a client's background in search of mitigating evidence, even though for tactical reasons, it might not be used later.
These expert opinions are supported by federal decisions which hold, while the failure to present mitigating evidence at trial can be reasonable if shown to be the result of tactical decision, the failure to investigate the existence of such evidence is ineffective assistance of counsel. See e.g., Wilson v. Butler, 813 F.2d 664 (5th Cir.1987); Middleton v. Dugger, 849 F.2d 491 (11th Cir.1988); Thomas v. Kemp, 796 F.2d 1322 (11th Cir.1986); Tyler v. Kemp, 755 F.2d 741 (11th Cir.1985).
Third, the record of trial counsel's representation at the sentencing hearing reveals no discernible strategy. At this phase of trial, counsel offered no opening statement. He offered no evidence, although he made clear to the jury that petitioner was testifying against his advice. On redirect, Mitchell elicited only the statement that none of Busby's family had visited him in the Vernon Parish jail.
In his extremely short closing argument, counsel acknowledged he was tired with the proceeding, admitted the existence of three aggravating circumstances, and reassured the jury that although defendant would be entitled to an appeal, if they gave the death sentence they should do so with "the appreciation that it'll be carried out." *172 He made no plea for Busby's life. This closing statement is, for all practical purposes, indistinguishable from that we held constitutionally deficient in State v. Myles, 389 So.2d 12 (La.1980) (on rehearing).
For the reasons given, we thus conclude the level of representation given Busby at the sentencing phase of trial equates to ineffective assistance of counsel.

II.

ACTUAL PREJUDICE
Having concluded the assistance provided by trial counsel at the sentencing phase was ineffective, we still must determine whether, but for counsel's errors, there is a reasonable probability the result of the proceeding would have been different. Strickland, 466 U.S. at 694, 104 S.Ct. at 2068.
In order for a capital sentencing to be individualized, the jury's discretion should be focused on the particularized nature of the crime and the characteristics of the individual defendant. Gregg v. Georgia, 428 U.S. 153, 206, 96 S.Ct. 2909, 2940, 49 L.Ed.2d 859 (1976). The defendant has the right to introduce virtually any evidence in mitigation at the penalty phase. Lockett v. Ohio, 438 U.S. 586, 605-06, 98 S.Ct. 2954, 2965, 57 L.Ed.2d 973 (1978). The nature of the penalty phase at a capital trial indicates the importance of the jury receiving adequate and accurate information regarding the defendant. Without such information, a jury cannot make the life or death decision in a rational and individualized manner. Tyler v. Kemp, 755 F.2d 741, 745 (11th Cir.1985).
It is important to note Busby himself did nothing to aid counsel's efforts in his behalf. He insisted he wanted to be charged with first degree murder, because it wouldn't bother him to get the death penalty. "I've been in and out of jail or prisons or different places for about the last twelve years, and either way it goes, I don't intend to spend the rest of my life in prison."
Although he claimed to be of above average intelligence, his psychological records showed he was actually of average intelligence. He also claimed to have 30 hours of college credit, but this claim is otherwise unsupported in the record. When asked by the prosecutor whether he was sorry he had killed Reeves, he responded, "I don't have remorse for anything I do." He claimed to have attempted to kill his mother at age 12 when the fact was that he tried to kill himself.
As expert psychiatric testimony at the evidentiary hearing made clear, this behavior is symptomatic of Busby's mental illness. Given counsel's awareness of Busby's history of evaluation and treatment for mental disease, it was incumbent upon him to gather documentation of such evidence and consider it for production before the jury, unless there were strategic reasons for not doing so. That such strategic choices can motivate counsel was made clear in Burger v. Kemp, 483 U.S. 776, 107 S.Ct. 3114, 97 L.Ed.2d 638 (1987), where the Court found counsel's failure to produce mitigating evidence reasonable because of his apprehension such evidence would contribute little to his client's chances of obtaining a life sentence while revealing possible damaging details about his past and allowing foreseeably devastating cross-examination. Id. 107 S.Ct. at 3123, n. 7. Here, once defendant took the stand such strategic choices became unavailable.
In order to effectively represent Busby, the jury should have been presented with available statutory mitigating circumstances as provided by La.C.Cr.P. arts. 905.3 and 905.5. Evidence of the existing mitigating factors of petitioner's history of emotional and mental problems would have supported a jury finding of the statutory mitigating circumstance of mental impairment.
We find in this case that, if the mitigating circumstance of mental impairment had been established, the degree of likelihood that a jury would not have recommended a death sentence is sufficient to undermine confidence in the outcome of this phase of trial. This appears more likely in a case where, as here, there was only one significant statutory aggravating circumstance. The totality of such evidence has the potential to totally change the evidentiary *173 picture by altering the causal relationship that can exist between mental illness and homicidal behavior. Psychiatric mitigating evidence not only can act in mitigation, it also can significantly weaken the aggravating factors. Middleton v. Dugger, 849 F.2d 491 (11th Cir.1988), citing Huckaby v. State, 343 So.2d 29, 33-34 (Fla. 1977).
Finally, other factors in counsel's representation at the sentencing phase bolsters a lack of confidence in the penalty. As we said in State v. Myles, 389 So.2d 12 (1980) (on rehearing), a person convicted of an offense punishable by death is entitled at his sentencing hearing to the reasonably competent assistance of an attorney acting as a diligent, conscientious advocate for his life. Id. at 28. In addition to counsel's failure to introduce available mitigating evidence, he did not make an opening statement, plead that his client's life be spared, or contest elements of the state's case. We find here, as we did in Myles, the defense attorney's efforts during the penalty phase of trial fell below the minimum constitutional standard applicable in a capital case.
For these reasons, the death penalty is vacated and the case is remanded for a new sentencing hearing.

OTHER ASSIGNMENTS OF ERROR
We now consider whether applicant's remaining assignments have merit.
In his second assignment, petitioner argues the prosecutor's closing argument violated petitioner's rights under the Eighth and Fourteenth Amendments. We addressed this issue on direct appeal and found it without merit. State v. Busby, 464 So.2d 262, 266-67 (La.1985). Petitioner now argues the holding in Caldwell v. Mississippi, 472 U.S. 320, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1985), a case decided after our review of Busby on direct appeal, calls for a reexamination of this issue. We disagree.
The ultimate issue raised under Caldwell is whether the prosecutor's remarks led the jury to believe responsibility for determining the appropriateness of the death sentence rested elsewhere. Caldwell, 472 U.S. at 340, 105 S.Ct. at 2645. This decision did not change our previous case law. See State v. Knighton, 436 So. 2d 1141, 1157 (La.1983), cert. denied, 465 U.S. 1051, 104 S.Ct. 1330, 79 L.Ed.2d 725; State v. Berry, 391 So.2d 406 (La.1980). In State v. Busby, 464 So.2d at 266, we considered the prosecutor's remarks in light of the judge's instructions and found it did not appear the jury was given the impression the judge would not impose the death sentence if recommended. Further, the judge told the jurors he would impose a life sentence if they could not make a unanimous recommendation.
In assignment three, petitioner alleges his Eighth and Fourteenth Amendment rights were violated by the sentencing jury's consideration of two invalid aggravating circumstances.
On direct review, we found invalid two of the three aggravating circumstances presented to the jury. State v. Busby, 464 So.2d at 268. The jury had considered whether Busby had a "significant prior history of criminal activity." This term had been declared unconstitutionally vague in State v. David, 425 So.2d 1241 (La.1983). We also held that although no one could consider a shotgun blast in the back less than cruel, the means by which Reeves was killed did not fall within the category of the cruel, heinous and atrocious crimes contemplated by our law. State v. Busby, 464 So.2d 262, 267 (La.1985), citing State v. Sonnier, 402 So.2d 650, 658 (La.1981).
Under three recent Supreme Court decisions, Johnson v. Mississippi, ___ U.S. ___, 108 S.Ct. 1981, 100 L.Ed.2d 575 (1988); Mills v. Maryland, ___ U.S.___, 108 S.Ct. 1860, 100 L.Ed.2d 384 (1988); Maynard v. Cartwright, ___ U.S.___, 108 S.Ct. 1853, 100 L.Ed.2d 372 (1988), petitioner contends it is no longer permissible in Louisiana to uphold a death sentence where the evidence is sufficient to support one aggravating circumstance if other aggravating circumstances have been found invalid by the reviewing courts.
*174 First of all, defendant misjudges the significance of Johnson, Mills, and Maynard to Louisiana's capital sentencing scheme, and, secondly, he misapplies them to his case. Those decisions all arose in jurisdictions where the sentencer is required to find that aggravating circumstances outweigh mitigating circumstances before imposing the death penalty. See, Johnson, 108 S.Ct. at 1984; Mills, 108 S.Ct. at 1865-1866; Maynard, 108 S.Ct. at 1859-60.
The well-settled rule in Louisiana is that we do not apply a balancing of aggravating and mitigating circumstances. In this state, when a statutory aggravating circumstance is found invalid or unsupported by the evidence, a death sentence will be upheld so long as the evidence is sufficient to support one valid aggravating circumstance, and so long as the introduction of evidence on the invalid circumstance does not interject an arbitrary factor into the proceedings. State v. Brown, 514 So. 2d 99, 112 (La.1987); State v. Jones, 474 So.2d 919, 932 (La.1985); State v. Wingo, 457 So.2d 1159 (La.1984); State v. Kirkpatrick, 443 So.2d 546 (La.1983); State v. Flowers, 441 So.2d 707 (La.1983); State v. James, 431 So.2d 399 (La.1983); State v. Sonnier, 402 So.2d 650 (La.1981).
Further, if the evidence of an invalid aggravating circumstance is otherwise admissible, as was evidence of Busby's prior criminal convictions under "character and propensity" evidence, there will not be a finding that such evidence interjected an arbitrary factor into the proceeding. State v. Byrne, 483 So.2d 564, 575, n. 5 (La.1986); State v. Wingo, supra; State v. Fuller, 454 So.2d 119, 124 (La.1984). Thus this assignment is without merit.
In his fourth assignment of error, petitioner alleges he was denied his right to appointment of a qualified expert in violation of the Sixth, Eighth, and Fourteenth Amendments.
In Ake v. Oklahoma, 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985), the Supreme Court held once a defendant makes a preliminary showing that his sanity at the time of offense is likely to be a significant factor at trial, due process requires the state provide an indigent defendant with access to a competent psychiatrist who will conduct an appropriate examination and assist in evaluation, preparation, and presentation of the defense. Id. at 83, 105 S.Ct. at 1096.
We find Ake inapplicable to this case. In Ake, the defense asked for such independent assistance. Here, counsel failed to ask for such assistance and did not pursue the psychiatric evidence that was available. This failure has given rise to constitutional claims of a different character, as discussed in our evaluation of petitioner's assignment dealing with ineffective assistance of counsel.
In petitioner's fifth assignment of error he argues his statement was unconstitutionally obtained and used against him at trial in violation of the Fifth, Sixth, and Fourteenth Amendments. We considered this assignment on direct appeal and found it without merit. State v. Busby, 464 So.2d at 264, n. 1.
In his sixth assignment of error, petitioner argues the trial court erred in denying an evidentiary hearing on issues other than ineffective assistance of counsel at the sentencing phase. Petitioner argues he should be granted an evidentiary hearing on his Ake claim, discussed supra, and his claim that he received ineffective assistance of counsel at the guilt phase of trial. We have addressed the Ake claim, as well as the issue of prejudice to petitioner in connection with the conviction phase, and have found both claims without merit.
In his final assignment, petitioner contends the cumulative effect of the violations of his rights was in itself a violation of his constitutional rights. Since we have found all but one of petitioner's assignments without merit, we conclude this assignment also is without merit.

DECREE
For the reasons assigned, we vacate the sentence of death and remand this case to the trial court for a new sentencing hearing. We again affirm defendant's conviction of first degree murder.
*175 CONVICTION AFFIRMED. SENTENCE VACATED; REMANDED FOR NEW SENTENCING HEARING.
NOTES
[1] La.R.S. 14:30 provides:

A. First degree murder is the killing of a human being:
(1) When the offender has specific intent to kill or to inflict great bodily harm and is engaged in the perpetration or attempted prepetration of ... armed robbery ....
[2] La.R.S. 14:14 adopts the so-called McNaughten rule as the test for insanity under Louisiana law and provides:

If the circumstances indicate that because of a mental defect the offender was incapable of distinguishing between right and wrong with reference to the conduct in question, the offender shall be exempt from criminal responsibility.
La.C.Cr.P. arts. 650-658 establishes the procedure whereby a defendant asserts the insanity defense at trial, including availability of the dual plea, procedure for a mental examination and presentation of testimony from members of the sanity commission.