William **MIDDLETON,**
Petitioner–Appellee,
Cross–Appellant,

v.

Richard L. **DUGGER,**
Respondent–Appellant,
Cross–Appellee.

No. 86–5520.

United States Court of Appeals,
Eleventh Circuit.

June 22, 1988.

---

Robert A. Butterworth, Atty. Gen., State of Fla., Dept. of Legal Affairs, Michael J. Neimand, Asst. Atty. Gen., Miami, Fla., for respondent-appellant, cross-appellee.

Eugene F. Zenobi, Louis M. Jepeway, Jr., Jepeway and Jepeway, P.A., Miami, Fla., for petitioner-appellee, cross-appellant.

Before RONEY, Chief Judge, HILL and KRAVITCH, Circuit Judges.

RONEY, Chief Judge:

Petitioner William Middleton was convicted of first-degree murder, grand theft and

unlawful use of a firearm in the commission of a felony. The trial court sentenced Middleton to death for the crime of first-degree murder. The judgment and sentence were affirmed by the Florida Supreme Court, *Middleton v. State*, 426 So.2d 548 (Fla.1983), and the United States Supreme Court denied certiorari. *Middleton v. Florida*, 463 U.S. 1230, 103 S.Ct. 3573, 77 L.Ed.2d 1413 (1983).

After an evidentiary hearing on Middleton's 28 U.S.C.A. § 2254 motion for habeas corpus relief, the district court concluded that Middleton did not have effective assistance of counsel at his sentencing proceedings, as required by the Sixth Amendment to the United States Constitution. The State appeals this determination, and Middleton cross-appeals the denial of relief on several issues, all related to his death sentence, not to his conviction: that comments by the trial judge and the prosecutor diminished the sense of responsibility the jury felt in determining sentence; that the instructions given to the jury improperly limited its consideration of mitigating evidence; and that his appellate counsel was ineffective for not having raised these two issues on appeal. Since we conclude that the district court properly determined that Middleton is entitled to a new sentencing proceeding, because of ineffective assistance of counsel, it is unnecessary to resolve the issues raised by Middleton's appeal.

Middleton was convicted and sentenced to death for the premeditated murder of Gladys Johnson, a woman who had taken him into her home, upon his parole from prison, because of his friendship with her son. The facts of this case have been documented in detail elsewhere and need not be restated here. *See e.g., Middleton v. State*, 426 So.2d 548 (Fla.1983).

## INEFFECTIVE ASSISTANCE AT SENTENCING

■ The steps for a proper analysis of an ineffective assistance of counsel claim in a case such as this are well established. Under *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), counsel is deemed to have been ineffective

when his acts or omissions were outside the wide range of professionally competent assistance. An attorney has a duty to conduct a reasonable investigation, including an investigation of the defendant's background, for possible mitigating evidence. *Thompson v. Wainwright*, 787 F.2d 1447, 1451 (11th Cir.1986). *First*, it must be determined whether a *reasonable investigation* should have uncovered such mitigating evidence. If so, then a determination must be made whether the failure to put this evidence before the jury was a *tactical choice* by trial counsel. If so, such a choice must be given a strong presumption of correctness, and the inquiry is generally at an end. *Funchess v. Wainwright*, 772 F.2d 683, 689–90 (11th Cir.1985). If, however, the failure to present the mitigating evidence was an oversight, and not a tactical decision, then a *harmlessness review* must be made to determine if there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Thus, it must be determined that defendant suffered *actual prejudice* due to the ineffectiveness of his trial counsel before relief will be granted.

### Reasonable Investigation

■ Middleton's trial counsel conducted almost no background investigation, despite discussions with Middleton concerning the existence of such mitigating evidence. As a consequence, the district court concluded that counsel failed to uncover an overwhelming amount of documentary mitigating evidence, such as:

*First*, a child psychiatric discharge summary from Elmhurst State Hospital. This discharge summary would have shown that Middleton was placed in a psychiatric hospital for about two weeks at the age of twelve. The written diagnostic impression of Middleton stated simply: "Schizophrenic Reaction, Chronic Paranoid Type with Passive Features." The resident psychiatrist, Dr. Ursula Thunberg, M.D., recommended that he be placed in a residential treatment center for emotionally-disturbed children. Dr. Thunberg would have been available to

testify at Middleton's trial, and did testify at the district court's evidentiary hearing.

*Second,* an affidavit by Dr. Mark Kane. Dr. Kane's affidavit refers to the psychiatric report made in connection with Middleton's stay at the Elmhurst State Hospital. In his affidavit, Dr. Kane states that psychological testing performed in 1968 strongly indicated that Middleton had a schizoid personality and was susceptible to schizophrenia.

*Third,* records from the various reform schools in which Middleton was confined, from family court, youth services, and prison health services. These records chronicle a childhood of brutal treatment and neglect, physical, sexual and drug abuse, a low I.Q. and mental illness.

The documentary evidence discussed above could have been obtained from a reasonably competent investigation into Middleton's background. Gail Anderson testified at the evidentiary hearing that in March 1985, she contacted the New York institutions holding the records discussed above, and within a period of two weeks had copies of these records. At that time, Ms. Anderson had been working for just three weeks at the Florida Clearing House for Criminal Justice, and she had no legal training or experience with the judicial system. This evidence amply supports the district court's conclusion that the documentary mitigating evidence was readily discoverable had trial counsel performed a reasonable background investigation, and his failure to marshal this already existing mitigating evidence was outside the range of professionally competent assistance.

### *Tactical Decision*

■ Next, it must be determined whether trial counsel might have had a tactical reason for not making such an investigation. The district court's conclusion that trial counsel had no valid tactical reasoning behind his failure to perform a background investigation for possible mitigating evidence is supported by a number of considerations in combination.

*First,* defendant's trial counsel, Fred Robbins, testified that he did not know of the existence of psychiatric records and that his failure to seek them out was not the result of any trial strategy. He further testified that had he known of the records he would have presented them for mitigation.

*Second,* Robert Link, an attorney who has handled numerous murder and capital cases after having read the trial transcripts and seen the evidence brought forth at the evidentiary hearing, testified as an expert that trial counsel had conducted insufficient background investigation into Middleton's case to uncover possible mitigating evidence. He testified that he could think of no strategic reason for not investigating a client's background in search of mitigating evidence even though, for tactical reasons, it might not be used later.

*Third,* the record at the sentencing proceeding supports the conclusion that trial counsel had no discernible strategy. At sentencing, he merely argued that the electric chair was a horrible form of execution, and that the aggravating circumstances did not outweigh the mitigating circumstances. Contrary to the State's assertions, there is no evidence to suggest that his failure to introduce the mitigating evidence was a strategic choice based upon maintaining defendant's innocence, as in *Funchess v. Wainwright,* 772 F.2d 683 (11th Cir.1985), in the hope of raising sufficient doubt in the jury's mind so that they might conclude that death was an inappropriate sentence here, despite conviction. Trial counsel simply failed to make any effort to investigate Middleton's background and, therefore, had nothing to introduce to mitigate the sentence of the jury.

### ACTUAL PREJUDICE

■ Having concluded that the assistance provided by trial counsel at the sentencing phase was ineffective, a determination is made as to whether, but for counsel's unprofessional errors, there is a reasonable probability that the result of the proceeding would have been different. *Strickland,* 466 U.S. at 694, 104 S.Ct. at 2068.

Considering the relative weight this evidence might have in mitigation, under the standards presently applicable to that function, the record amply supports the district court's conclusion that a reasonable probability existed that the result of the sentencing proceeding would have been different if the judge and jury had been given this evidence.

*First,* trial counsel Robbins at the evidentiary hearing testified that had he introduced the mitigating evidence he now knew to exist, he believes the jury would have returned a sentence of life imprisonment, rather than death. Robbins was the only witness at the evidentiary hearing who was familiar with the atmosphere at trial. The district court, as the finder of fact, was entitled to accord his opinion credence.

*Second,* the amount of factual and record evidence, which could have been used in mitigation, is considerable. The ten exhibits presented at the evidentiary hearing, in the words of the district court, "chronicle a childhood of brutal treatment and neglect, sexual and drug abuse, low I.Q. and mental illness." The record is replete with instances supporting this conclusion. Court and foster home records indicate constant neglect as a child, and early emotional and mental problems. From the age of ten, Middleton frequently ran away from home, and lived for periods at a time in the streets of New York City. Middleton had a troubled relationship with his father compounded by the traumatic effect of his mother's death when he was ten. At that time he had run away from home, and his father told him that his absence had caused her death. He once returned home unexpectedly only to find his father engaged in a sexual assault upon his sister. Middleton never finished the fifth grade and never has been able to read at more than a second-grade level. He has a borderline I.Q. of 76. He was sent to Elmhurst State Hospital at the age of 12 for testing concerning organic brain damage from two head injuries for which he had been hospitalized. The Elmhurst staff recommended that, at age twelve, he be placed in a setting for emotionally-disturbed children which might enable psychological therapy or psychiatric care evaluation. He was sexually assaulted while at a school for boys, and the first of several suicide attempts occurred at age thirteen.

*Third,* some of this potential mitigating evidence could well have met the standard for statutory mitigating factors. Dr. Henry Krop is a qualified expert in clinical and forensic psychology. He examined Middleton and the record prior to the evidentiary hearing. He concluded that Middleton suffers today from the same mental illness described by Drs. Thunberg and Kane in his youth. He, along with Dr. Thunberg testified that Middleton was mentally ill at age twelve, and that the chances for his overcoming his mental illness without the recommended treatment were almost non-existent. Dr. Krop also expressed his belief that Middleton was under extreme emotional duress at the time of the homicide, and that he had a very limited capacity to conform his conduct to the regiments of the law. Dr. Krop's testimony, or testimony substantially similar to it, could very possibly have been obtained at the time of the original sentencing proceeding.

This kind of psychiatric evidence, it has been held, has the potential to totally change the evidentiary picture by altering the causal relationship that can exist between mental illness and homicidal behavior. "Thus, psychiatric mitigating evidence not only can act in mitigation, it also could significantly weaken the aggravating factors." *See Huckaby v. State,* 343 So.2d 29, 33–34 (Fla.1977); *Elledge v. Dugger,* 823 F.2d 1439 (11th Cir.1987).

## CONCLUSION

Despite the statutory aggravating factors in this case, there is ample support for the district court's holding that a new sentencing proceeding is required because there is a reasonable probability that the result of the sentencing proceeding would have been different if trial counsel's unprofessional errors at sentencing had not been committed. *Strickland,* 466 U.S. at 689, 104 S.Ct. at 2065.

AFFIRMED.