**Ex parte Leonel Torres HERRERA.**

**No. 71171.**

Court of Criminal Appeals of Texas,
En Banc.

May 29, 1991.

Rehearing Overruled Sept. 18, 1991.

Certiorari Denied Feb. 19, 1992.
See 112 S.Ct. 1074.

Robert L. McGlasson, Austin, for appellant.

Luis V. Saenz, Dist. Atty. and John A. Olson, Asst. Dist. Atty., Brownsville, Robert Huttash, State's Atty., Austin, for the State.

## OPINION

### PER CURIAM.

This is a post conviction application for writ of habeas corpus filed pursuant to the provisions of Article 11.07, V.A.C.C.P.

On January 20, 1982, applicant was found guilty of the offense of capital murder. After the jury returned affirmative answers to the special issues, punishment was assessed at death. This Court affirmed applicant's conviction on direct appeal. *Herrera v. State*, 682 S.W.2d 313 (Tex.Cr.App.1984).

On January 17, 1991, this Court ordered the instant cause filed and set on applicant's third allegation. In that allegation, it is urged the jury in applicant's capital murder trial was precluded from considering evidence which "counseled in favor" of a sentence less than death, in violation of applicant's Sixth, Eighth and Fourteenth Amendment rights. The trial court has entered findings of fact and conclusions of law and recommended the relief sought be denied.

This Court has reviewed the record with respect to the allegation presented by applicant and finds that the findings and conclusions entered by the trial court are supported by the record and upon such basis the relief sought is denied.[1]

CLINTON, Judge, dissenting.

This post-conviction application for writ of habeas corpus was filed and set so that the Court could hear argument on the question whether, and if so, under what circumstances, a claim under *Penry v. Lynaugh*, 492 U.S. 302, 109 S.Ct. 2934, 106 L.Ed.2d 256 (1989), can be procedurally defaulted for purposes of state review. A majority of the Court has since held that for any cause that was tried before the date of decision in *Penry*, any forfeiture from a failure to object or otherwise raise the issue in the trial court will be excused. *Black v. State*, 816 S.W.2d 350 (Tex.Cr. App.1991) (Campbell, J., concurring). This is because before that date a *Penry* claim was a "right not recognized" in this Court. *Ex parte Chambers*, 688 S.W.2d 483 (Tex. Cr.App.1984) (Campbell, J., concurring). Applicant Herrera's trial was in January of 1982, seven years before the United States Supreme Court's decision in *Penry*. Nevertheless, the Court holds that applicant's application was improvidently filed and set. We know from *Black* that it cannot have been improvident because of a

---

1. We specifically decline to adopt conclusion of law No. 6 entered by the trial court concerning applicant's alleged procedural default. See *Black v. State*, 816 S.W.2d 350 (Tex.Cr.App. 1991). Applicant's remaining seven allegations are denied on the basis of the findings and conclusions entered by the trial court.

procedural bar. See also *Selvage v. Collins*, 816 S.W.2d 390 (Tex.Cr.App.1991) (Opinion on Certified Question from the United States Court of Appeals for the Fifth Circuit). I presume, then, that the majority rejects applicant's *Penry* claim on the merits.

Applicant was convicted of the murder of a police officer. See *Herrera v. State*, 682 S.W.2d 313 (Tex.Cr.App.1984). He now identifies six categories of mitigating evidence he claims have support in the record of his capital murder trial. Those categories are:

(1) his military service and record;

(2) his history of drug abuse and addiction;

(3) his mental instability;

(4) that he has a caring and loving family that wants him to live;

(5) police brutality after his arrest (the idea being that because he has already suffered some punishment for his crime, a reasonable jury could feel the death penalty to be unwarranted);

(6) his remorse.

Whether any or all of these categories reflect true *Penry* evidence is a question we need not address here, although unquestionably at least some of them do. For in any event, by my reading of the trial record, none of these categories is substantiated by evidence sufficient to invoke a reasoned moral response of leniency. In short, I do not believe evidence was presented having mitigating significance beyond the Article 37.071(b), V.A.C.C.P., special issues. Thus I cannot conclude that applicant has been sentenced to death in contravention of the Eighth Amendment. See *Gribble v. State*, 808 S.W.2d 65 at 75 (Tex.Cr.App.1990).

However, applicant also claims that the Texas capital sentencing scheme prevented him from adducing substantial mitigating evidence. In the course of argument he drops a footnote in which he somewhat tentatively advances a Sixth Amendment ineffective assistance of counsel claim for failure of counsel to investigate and develop this evidence at applicant's trial. In an appendix to his writ application he documents what seems to me evidence of substantial mitigating potential that could have been tendered at the time of trial but was not. This evidence takes two forms: (1) affidavits of members of applicant's family documenting his history of abuse, his mental instability and his drug addiction; and (2) a psychologist's report. There is also an affidavit from applicant's only surviving trial counsel explaining why this evidence was not sought out at the time of trial.

### Family Affidavits

There are affidavits from applicant's mother, his sister-in-law, his common-law wife, and two sisters. In synthesis, they tell the following grim story.

Applicant's father was a violent alcoholic who regularly beat applicant's mother "black and blue." When she was pregnant with applicant, he was known to have kicked her in the stomach. Applicant was an asthmatic child who suffered from scarlet fever and chronic headaches. Unable to afford a doctor, applicant's mother treated him with home remedies. Applicant would try to protect his mother from his father's abusive outbursts, and would endure beatings from his father as a consequence, often punched mercilessly about the head and face. Applicant excelled in sports, but had a tendency to suffer head injuries. Once he was accidentally knocked unconscious with a baseball bat.

Applicant dropped out of high school and joined the Navy in 1967. He spent the next two years on a ship somewhere off the coast of Vietnam, and purportedly "saw combat." He was clearly traumatized by his experience, but would not talk about it to others, at least "not in any kind of way that [people] could understand." He returned from Vietnam a changed and paranoid man, "and if you asked him about who might come after him, all he would tell you was that it was the people who had seen what happened during the war." He sometimes lapsed into a glassy-eyed trance-like state, and would talk nonsense until he could be brought out of it.

After Vietnam, applicant took a common-law wife and started a family. At first he was a "loyal" family man. He and his brother started a business together running a convenience store. But when one of his daughters was born prematurely and spent a month in the hospital, with expenses mounting up, applicant became depressed.

Meanwhile applicant's father was in an auto accident and recovered "a tremendous amount of money" in a lawsuit. His drug of choice had changed from alcohol to cocaine, and he "used the money to buy a portion of the drug trade in Hidalgo County." Applicant and his brother were induced with free cocaine to join their father's enterprise, and their own business failed. Applicant became heavily dependent, and from about mid–1980 on he began to live for cocaine. He lost 40 pounds, his face turned gray, and his nose would "pour blood" at a mere touch. His paranoia increased. He believed his wife was trying to poison him, and began to live in his car. At one point he proclaimed that "green things were coming down from the trees and ... they were after him." On the day of the offense applicant's sister "could tell he had a lot of drugs in him."

### Psychologist's Report

After interviewing applicant in TDC, conducting a battery of psychological tests, and reviewing the same affidavits as those summarized above, Dr. Brad Fisher, a specialist in forensic clinical psychology, drew the following conclusions:

> Leonel Herrera is a 43 year old Mexican–American male currently presiding [sic] on Death Row, having resided there since 1982. It is the opinion of this evaluator that this individual suffers from neurological dysfunction, combined with (but not totally separate from) the presence of [Post Traumatic Stress Disorder]. It is probable that these conditions are chronic in the sense that they have existed at least since his experience in Vietnam, and in the case of the neurological handicaps, possibly since a much earlier age. Evidence for these dysfunctions is presented consistently from test data, behavioral observations, and the information available to this examiner for review.

> A person who suffers from brain damage does not necessarily have sub-average intellectual functioning. However, such an individual is likely to have inherent limitations in judgment and impulse control.

> A person who suffers from PTSD suffers from serious and severe limitations on cognitive functioning, judgment, insight, and perception. All facets of the sufferer's life are affected by this disorder, as he or she frequently cannot reason adequately, perceive reality normally, or respond to situations adequately.

> Someone with brain damage, who also suffers from PTSD, is predisposed to substance abuse. A person who suffers from brain damage, PTSD, and substance abuse may deliberately commit a crime, and be violent in the future. However, such a person's culpability is seriously diminished where these conditions occur. This was Mr. Herrera's condition in the fall of 1981.

Thus, we have not only raw data from which a finding of diminished responsibility could be made in this cause—we also have an expert opinion that the raw data does in fact support such a finding in his professional opinion. This would provide a solid base for a jury, in its reasoned moral judgment, to impose a sentence less than death.

### Counsel's Affidavit

Applicant's lead counsel at trial has since died. The writ application contains an affidavit from his second chair, Jose Antonio Gomez, who "was not present during voir dire, but entered an appearance after voir dire was completed." His affidavit reads, in relevant part:

> "This was the first capital case in which I had been involved. Naturally I read and researched the Texas death penalty statute. From my understanding of the statute and the facts of the case, the jurors in Mr. Herrera's case, when deciding the sentence, were to determine only a.) whether the offense was deliberate,

and b.) whether there was a probability that Mr. Herrera would be dangerous in the future. If the jurors answered these questions affirmatively, then the penalty would be death.

"Neither [lead counsel] nor I conducted any investigation into Mr. Herrera's background. We did not have Mr. Herrera evaluated by any mental health expert. We knew that Mr. Herrera was addicted to controlled substances at the time of the offense, we knew there was a possibility that he suffered from brain damage, and we believed that he was under the influence of controlled substances at the time of the offense. We believed, however, that evidence of those conditions would support an affirmative answer to the only two questions that the jury would be allowed to consider and required to answer. While such evidence could provide a compelling basis for a sentence less than death, the statute, as we read it, allowed juror consideration of such evidence only as it related to their answers to two questions, deliberateness and future dangerousness. We would have helped prove the State's case by presenting such evidence, and such evidence could not have been considered independently as providing a basis for a sentence less than death. Because of these restrictions, no such evidence was investigated or presented."

It seems to me this affidavit is susceptible to two interpretations. Counsel could be saying that he and co-counsel were simply unaware of the Eighth Amendment principles that eventually led to the holding in *Penry*, and failed to investigate mitigating evidence for the simple reason that they believed it to be irrelevant under the statutory scheme. In this event the ineffective counsel claim seems to be established, for there is compelling evidence of mitigation that for no valid reason counsel failed to investigate. E.g., *Jones v. Thigpen*, 788 F.2d 1101 (CA5 1986); *Blake v. Kemp*, 758 F.2d 523 (CA11 1985). Alternatively, counsel could be saying they were aware of precedent from this Court holding that an additional instruction regarding uses of mitigating evidence was unwarranted, and

believed that to present mitigating evidence and ask the trial court for an instruction would have been futile, and only deleterious to applicant's cause at the trial level. In this event the failure to investigate and present viable mitigating evidence could be viewed as a tactical decision. The Fifth Circuit has ruled that a tactical decision to forego admitting mitigating evidence will not support an Eighth Amendment *Penry* claim, *per se*. See *May v. Collins*, 904 F.2d 228 (CA5 1990); *DeLuna v. Lynaugh*, 890 F.2d 720 (CA5 1990). A tactical decision not to investigate or present mitigating evidence may be said to foreclose an ineffectiveness claim under the Sixth Amendment as well. E.g., *Middleton v. Dugger*, 849 F.2d 491, at 493–4 (CA11 1988).

But I am inclined to believe that a capital accused who can show that *Penry* evidence existed and could have been presented at his trial should be entitled to relief even if his counsel made a conscious decision not to investigate or adduce that evidence at the time of trial. Because of this Court's reliance upon the false assurances of *Jurek v. Texas*, 428 U.S. 262, 96 S.Ct. 2950, 49 L.Ed.2d 929 (1976), that our statute was constitutional as is, even after *Lockett v. Ohio*, 438 U.S., 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978), and its progeny cast a pall upon it, applicant's counsel was put in an intolerable position.

It would be hard to blame counsel if he had decided not to investigate mitigating evidence under the circumstances. There would have been no way for him to assure in advance of trial that the trial court would give the jury an instruction to consider mitigating evidence apart from its relevance to special issues, and make a reasoned moral judgment whether applicant should live or die. Given this Court's pre-*Penry* cases, and the fact that Article 37.071, V.A.C.C.P., does not seem to permit, much less authorize, such an instruction, the chances of his getting it would have been slim to none. Without the instruction, counsel could only hurt applicant's cause by presenting the "mitigating" evidence outlined above. For, although it

makes a strong case for a finding of diminished responsibility, applicant's evidence also tends strongly to show he will be a future danger to society. If counsel made a "tactical" decision not to seek and present mitigating evidence, he was forced into that "Hobson's Choice" by Article 37.-071, supra, and this Court's adherence to *Jurek* even after the *Lockett* writing was on the wall. See *Stewart v. State*, 686 S.W.2d 118 (Tex.Cr.App.1984) (Clinton, J., dissenting). We should not now deny a Sixth Amendment ineffective counsel claim because of a court-induced "tactical" decision to avoid helping the State satisfy its burden of proof. See *May v. Collins*, supra, at 232–34 (Reavley, J., concurring).

In my view we should sustain applicant's Sixth Amendment ineffective assistance of counsel claim. If the Court disagrees that such a claim can be sustained despite a "tactical" decision not to investigate mitigating evidence here, then we should at least remand for an evidentiary hearing to determine whether counsel's decision was in fact a tactical one, or was simply an oversight resulting from his failure to comprehend the Eighth Amendment principles involved. For if counsel failed to investigate out of pure ignorance, surely he was ineffective. E.g., *Middleton v. Dugger*, supra. Given the nature of the *Penry* evidence here, I believe there is a "reasonable probability"—that is to say, "a probability sufficient to undermine confidence in the outcome"—that the jury might have found in its reasoned moral judgment that applicant deserved a sentence less than death. *Strickland v. Washington*, 466 U.S. 668, 694, 104 S.Ct. 2052, at 2068, 80 L.Ed.2d 674, at 698 (1984). Moreover, if the Court chooses to remand for an evidentiary hearing, proposed findings of fact can be made by the habeas court bearing specifically on applicant's Sixth Amendment ineffective counsel claim—something that was not done before we filed and set the cause for submission.

The Court should either grant relief in this cause on the basis of a denial of applicant's Sixth Amendment right to effective assistance of counsel, or, failing that, remand the cause for an evidentiary hearing on the question of why counsel failed to pursue an investigation into mitigating evidence, and require specific factfinding from the habeas court on the Sixth Amendment issue. The Court takes neither of these courses, and because it does not, I respectfully dissent.

MALONEY, Judge, dissenting.

The evidence listed in the application for writ of habeas corpus is evidence that would have been harmful to the defendant if offered at trial without instructing the jury that it could consider and give effect to mitigating evidence by declining to impose the death penalty. A request for such an instruction would have been futile at the time this case was tried. See *Stewart v. State*, 686 S.W.2d 118 (Tex.Cr.App.1984).

I do not believe that counsel was incompetent because he did not proffer the evidence listed in the application at the time of trial. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The machinery in place at the time of this trial militated that competent counsel not proffer "two edged sword" *Penry* type evidence since it conceivably might have been utilized by the State; but without directions to the jury in accordance with the instruction mentioned above. *Penry v. Lynaugh*, 492 U.S. 302, 109 S.Ct. 2934, 106 L.Ed.2d 256 (1989).

The Texas scheme of submitting the statutory issues to the jury on whether the defendant should receive death under Article 37.071, V.A.C.C.P., has never provided and still does not provide a mechanism for the jury to consider *Penry* type evidence in mitigation of the death penalty (evidence that goes beyond the scope of the statutory issues); an issue that would allow the jury to make an individualized assessment of the defendant and a "reasoned moral response" about the appropriateness of the death penalty where such evidence exists.

Until today, neither this Court nor the legislature has required that the trial courts of this State submit such an issue, despite the warnings, albeit sometimes clouded, suggested by *Woodson v. North*

*Carolina,* 428 U.S. 280, 96 S.Ct. 2978, 49 L.Ed.2d 944 (1975); *Jurek v. Texas,* 428 U.S. 262, 96 S.Ct. 2950, 49 L.Ed.2d 929 (1976); *Lockett v. Ohio,* 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978); *Green v. Georgia,* 442 U.S. 95, 99 S.Ct. 2150, 60 L.Ed.2d 738 (1979); *Eddings v. Oklahoma,* 455 U.S. 104, 102 S.Ct. 869, 71 L.Ed.2d 1 (1982); *Hitchcock v. Dugger,* 481 U.S. 393, 107 S.Ct. 1821, 95 L.Ed.2d 347 (1987); *Penry, supra.* Cf., *Adams v. State,* 577 S.W.2d 717 (Tex.Cr.App.1979); *Quinones v. State,* 592 S.W.2d 933 (Tex.Cr.App.1980); *Lackey v. State,* 638 S.W.2d 439, (Tex.Cr.App.1982); *Stewart v. State, supra. See also Gribble v. State,* 808 S.W.2d 65, (Tex.Cr.App.1990).

We have decided today that in the trials occurring before *Penry,* there is no procedural default in having failed to request, at the time of trial, a jury instruction on the *Penry* mitigation issue. *Black v. State,* 816 S.W.2d 350 (Tex.Cr.App.1991). *See also Selvage v. Collins,* 816 S.W.2d 390 (Tex.Cr.App.1991) (Opinion on Certified Question from the United States Court of Appeals for the Fifth Circuit). In *Lackey v. State,* 819 S.W.2d 111 (Tex.Cr.App.1989) also decided today, although without unanimity and completeness, we attempt to define *Penry* type evidence. In *Ex parte Goodman,* 816 S.W.2d 383 (Tex.Cr.App. No. 70,887), we held today that, because it implies a violation of the Eighth and Fourteenth Amendments, the failure to properly instruct the jury on *Penry* type evidence may be cognizable by way of post conviction writ of habeas corpus under Article 11.07, V.A.C.C.P., despite applicant's failure to complain on direct appeal. However, it was mentioned, "absent a contemporaneous offer of proof or bill of exception detailing what mitigating evidence was tactically withheld by the appellant during trial, we will not be heard to consider the same now." *See Goodman* at p. 386, n. 6.

Where this court and the legislature have heretofore failed to give direction, we cannot fault the bar for failing to perfect error or proffer evidence; and this is particularly true since neither we nor the Supreme Court of the United States have yet to fully define the extent, boundaries and limitations of *Penry* type evidence.

I would remand this case for an evidentiary hearing so that the applicant might be allowed to develop his *Penry* type evidence and so that it might be determined if in fact the evidence is that which should have been submitted to the jury with a proper instruction in accordance with the mandates of *Penry v. Lynaugh, supra.* Because the majority does not do so, I respectfully dissent.