Graham 



TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-95-00050-CV






Gary Graham, Appellant



v.



Texas Board of Pardons and Paroles, Jack Kyle, Irma Cauley, Kenneth Coleman,


Bennie Elmore, John Escobedo, Albert Sanchez, Mae Jackson, Terrie Schnorrenberg,


Winona Miles, Daniel Downs, Paul Prejean, Mary Leal, Henry Keene, Iris Lawrence,


Troy Fox, Hub Bechtol, Gilbert Rodriguez, Texas Department of Criminal Justice,


and James Lynaugh, Appellees







FROM THE DISTRICT COURT OF TRAVIS COUNTY, 299TH JUDICIAL DISTRICT


NO. 93-08624, HONORABLE PETER M. LOWRY, JUDGE PRESIDING







 Appellant Gary Graham, a death-row prisoner, sued in district court for a
declaratory judgment and injunction that appellees (1) (collectively "the Board") were required to
hold a hearing to consider his petition for executive clemency. The district court denied all relief,
and Graham now appeals. We will affirm the district-court judgment.



BACKGROUND


 In October 1981, appellant Graham was convicted of capital murder and sentenced
to death. The Court of Criminal Appeals affirmed Graham's conviction and sentence. Graham
v. State, 671 S.W.2d 529 (Tex. Crim. App. 1984). Graham did not seek certiorari from the
United States Supreme Court, and the convicting district court set Graham's execution for July
1987. Graham unsuccessfully brought a series of state habeas corpus proceedings on several
grounds, including a claim of actual innocence, and the Court of Criminal Appeals denied relief
on each occasion. (2) Graham also brought an unsuccessful federal habeas corpus petition arguing
that the statutory special issues used in his sentencing were unconstitutional because they failed
to allow full consideration of his mitigating evidence. (3) After Graham had been denied relief on
these challenges, the convicting court reset Graham's execution for April 29, 1993. Graham then
sought habeas corpus relief in federal court a second time, based in part on his claim of actual
innocence supported by newly discovered evidence. The petition is still under consideration by
the Fifth Circuit. (4)

 The United States Supreme Court recently discussed the due process considerations
surrounding a death-row prisoner's claim of actual innocence based on newly-discovered evidence
in Herrera v. Collins, 122 L. Ed. 2d 203 (1993). Herrera was a Texas death-row prisoner who
had unsuccessfully challenged his murder conviction by applications for state and federal habeas
corpus. Ten years after his conviction, Herrera brought a second round of state and federal
habeas corpus petitions claiming that he was actually innocent of the murder, making his execution
violative of the Fourteenth Amendment's Due Process Clause. Id. at 212; see U.S. Const. amend.
XIV, § 1. The Court of Criminal Appeals denied relief. Ex parte Herrera, 819 S.W.2d 528
(Tex. Crim. App. 1991), cert. denied sub nom. Herrera v. Texas, 112 S.Ct. 1074 (1992). In the
federal proceeding, the Supreme Court affirmed the Fifth Circuit's determination that Herrera was
not entitled to relief because a claim of actual innocence does not entail a constitutional violation
upon which federal habeas corpus relief may be grounded. Herrera v. Collins, 122 L. Ed. 2d at
215-216.

 The Supreme Court found that Texas did not violate Herrera's constitutional rights
by imposing a 30-day time limit for filing a claim of actual innocence based upon newly
discovered evidence. Id. at 223. The Court noted that due process "does not require that every
conceivable step be taken, at whatever cost, to eliminate the possibility of convicting an innocent
person." Id. at 216 (quoting Patterson v. New York, 432 U.S. 197, 208 (1977)). The Supreme
Court noted that it would only invalidate state criminal-law procedures that offend deeply rooted
and fundamental traditions of justice because the states have a particular expertise in criminal
procedure grounded in centuries of common-law tradition. Id. at 221. In a survey of English and
state common-law practice, the Court found a strong tradition limiting motions for new trial based
on newly discovered evidence to a short time after conviction. Id. at 223. Based on that tradition
and the fact that numerous states today require that such claims be made within 60 days of
judgment, the Court found that Texas' procedure did not violate the Due Process Clause because
it did not transgress fundamental and deeply rooted principles of fairness and justice. Id. at 223.

 In support of its holding, the Court stressed that the existence of clemency in Texas
was important to its due process analysis. Id. at 224. The Court noted that clemency is the usual vehicle for addressing claims of actual innocence: "the traditional remedy for claims of
innocence based on new evidence, discovered too late in the day to file a new trial motion, has
been executive clemency." Id. at 227. Clemency buttresses the process given in the criminal
courts by acting as a "fail safe" in the criminal justice system. Id. at 226.

 In the wake of Herrera, Graham filed a petition for executive clemency in 1993,
asking for a hearing, a reprieve, a conditional pardon, or a commutation of sentence. Graham
based his petition on the claim of actual innocence he had made in his second round of habeas
corpus petitions. The Board denied his petition on all counts, voting 12 to 5 against holding a
hearing, 10 to 7 against a reprieve, 12 to 1 against a commutation, and 13 to 0 against a
conditional pardon. The Board did not hold a hearing on Graham's petition or convene as a body;
each individual member received the petition and faxed a voting sheet to the Board's headquarters.

 In July 1993, Graham filed the instant cause against the Board in Travis County
district court. Graham sought a temporary and permanent injunction requiring the Board to give
him a "due course of law" hearing (5) on his clemency petition and sought a declaratory judgment that the Board was required to accord him such a hearing under the Texas Constitution and the
Administrative Procedure Act. The district court granted a temporary injunction in favor of
Graham, requiring the Board to hold a due course of law hearing on Graham's petition for
clemency before the execution date. The Board then appealed the temporary injunction to this
Court, and Graham sought a stay of execution pending resolution of the appeal. We issued a
temporary injunction to protect our jurisdiction over the cause, which had the effect of staying
Graham's execution. Texas Bd. of Pardons & Paroles v. Graham, No. 3-93-421-CV (Tex.
App.--Austin 1993, no writ) (not designated for publication).

 The Board and the Harris County District Attorney sought leave from the Court
of Criminal Appeals to file a petition for writ of mandamus to set aside our temporary injunction. 
On November 9, 1993, the court granted leave to file mandamus. Texas ex rel. Holmes v. Court
of Appeals for the Third Dist., 885 S.W.2d 386, 386 (Tex. Crim. App. 1993, orig. proceeding
[leave granted]). In April 1994 the Court of Criminal Appeals held that this Court lacked
jurisdiction to issue a temporary injunction that had the effect of staying Graham's execution. 
Texas ex rel. Holmes v. Court of Appeals for the Third Dist., 885 S.W.2d 389, 396 (Tex. Crim.
App. 1994, orig. proceeding) (hereinafter "Holmes"). The court therefore conditionally granted
the Board's writ of mandamus. Id. at 392.

 The Court of Criminal Appeals also addressed, at the Board's request, Graham's
ability to bring his claim of actual innocence by means of a state habeas corpus proceeding. Id. 
Graham argued that he was pursuing a civil appeal on his clemency petition because controlling
precedent prohibited the use of state habeas corpus for claims of innocence supported by newly
discovered evidence. See Ex parte Binder, 660 S.W.2d 103, 106 (Tex. Crim. App. 1983). The
court revisited the rationale for Binder and held that state habeas corpus is the appropriate remedy
for a prisoner in Graham's situation. Holmes, 885 S.W.2d at 397. The court held as a "sound
and fundamental principle of jurisprudence" that "the execution of an innocent person would
violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution." 
Id. (citing Herrera, 113 S.Ct. at 870 (O'Connor and Kennedy, JJ., concurring), at 875 (White,
J., concurring), and at 876 (Blackmun, Stevens, and Souter, JJ., dissenting)). Accordingly, the
court held that Graham could present his claim via state habeas because he alleged a cognizable
deprivation of constitutional rights: that his actual innocence would make his pending execution
unconstitutional. Id. at 397-98 (overruling Ex parte Binder, 660 S.W.2d 103 (Tex. Crim. App.
1983)).

 The court set out standards for implementation of the new state habeas procedure
it created. Id. at 398-99. The court first set a threshold standard for determining whether a claim
of actual innocence based on newly discovered evidence amounted to a constitutional question,
holding that a habeas applicant must "demonstrate that the newly discovered evidence, if true,
creates a doubt as to the efficacy of the verdict sufficient to undermine the confidence in the
verdict and that it is probable that the verdict would be different." Id. at 398. After meeting this
threshold requirement, the applicant is entitled to a hearing on the newly discovered evidence. 
However, to obtain habeas relief, the applicant's burden at the hearing is to show that, "based on
the newly discovered evidence and the entire record before the jury that convicted him, no rational
trier of fact could find proof of guilt beyond a reasonable doubt." Id. at 399; see also Jackson
v. Virginia, 443 U.S. 307, 324 (1979). The court declined to assume original habeas jurisdiction
and resolve the merits of Graham's claim. Id. at 399.

 The Holmes decision reflects current doubts about the efficacy of executive
clemency as a "fail-safe" for death-row prisoners. Though the United States Supreme Court in
Herrera was certainly correct in its conclusion that clemency has traditionally served as the fail-safe, that tradition is subject to serious criticism. For example, the clemency power has been
notoriously susceptible to abuse by governors. See Daniel T. Kobil, The Quality of Mercy
Strained: Wresting the Pardoning Power from the King, 69 Tex. L. Rev. 569, 573, 607 (1991). 
Such abuse may take the form of corruption (6) or political reaction to strong public opinion. (7) Texas
split its clemency power between the governor and the Board following charges that Texas
governors abused the power early in this century. See Tex. Const. art. IV, § 11 interp.
commentary (West 1984). Twenty-five other states have also lodged some measure of clemency
power in an executive agency. Kobil, supra, at 605 n.233, 605 n.234. Though such measures
have undoubtedly reduced clemency abuses, the clemency process is still greatly affected by public
opinion and political pressures. Furthermore, the gathering and legal analysis of evidence, which
is required to effectively dispose of a claim such as Graham's, lies in the special province of the
judiciary. Trial courts specialize in conducting evidentiary hearings, and habeas corpus is a well-defined mechanism for challenging the validity of a criminal conviction. The executive branch,
in which the clemency power resides, lacks the judiciary's expertise and experience in evidentiary
reexamination of criminal convictions. Given these shortcomings of executive clemency, the Holmes decision marks a sound move to let the judicial branch of
government act as the "fail-safe" for actual innocence claims by means of well-established habeas
corpus procedures.

 On remand in Holmes, we complied with the Court of Criminal Appeals' opinion
by vacating our injunction and dissolving the temporary injunction granted by the trial court. 
Texas Bd. of Pardons & Paroles v. Graham, 878 S.W.2d 684, 685-86 (Tex. App.--Austin 1994,
no writ). However, we declined as improper a review of the merits of Graham's case because the
Board's appeal had been taken only as an interlocutory review of the trial court's temporary
injunction. Id. Accordingly, the district court proceeded to trial on the merits of Graham's suit
against the Board. In October 1994, the district court rendered judgment that Graham was not
entitled to a permanent injunction or declaratory relief because the state habeas procedure
fashioned for Graham by the Court of Criminal Appeals in Holmes accorded him all the process
he was due. Graham now appeals the district-court judgment denying him declaratory and
injunctive relief.



DISCUSSION AND HOLDINGS


 Graham grounds his claim on the "due course of law" provision of the Texas
Constitution. (8) Tex. Const. art. I, § 19. (9) We begin our analysis by noting the well-settled proposition that our state constitution may provide greater protection for individual rights than the
United States Constitution. City of Mesquite v. Aladdin's Castle, Inc., 455 U.S. 283, 293 (1982);
Pruneyard Shopping Ctr. v. Robins, 447 U.S. 74, 81 (1980). The federal constitution serves as
a floor of protection for individual rights that state courts must respect. Howlett ex rel. Howlett
v. Rose, 496 U.S. 356, 369-72 (1990); Chapman v. California, 386 U.S. 18, 21 (1967); Lecroy
v. Hanlon, 713 S.W.2d 335, 338 (Tex. 1986). Both high courts of this state have insisted that
the Texas judiciary interpret our constitution in a manner that ensures its independent vitality. 
See, e.g., Davenport v. Garcia, 834 S.W.2d 4, 11-19 (Tex. 1992); Lecroy, 713 S.W.2d at 338;
Bauder v. State, No. 1058-94, slip op. at 2 (Tex. Crim. App. 1995); Heitman v. State, 815
S.W.2d 681, 685-89 (Tex. Crim. App. 1991). "By enforcing our constitution, we provide Texans
with their full individual rights and strengthen federalism." LeCroy, 713 S.W.2d at 339 (quoted
in Davenport, 834 S.W.2d at 13). The very first section of the Texas Constitution urges a
vigorous "preservation of the right of local self-government . . . ." Tex. Const. art I, § 1. Our
state policy is in full accord with that of the United States Supreme Court, which has long stressed
the important role of independent state constitutional jurisprudence in our federal system. See,
e.g., Massachusetts v. Upton, 466 U.S. 727, 735 (1984) (Stevens, J., concurring); Minnesota v.
National Tea Co., 309 U.S. 551, 557 (1940); Murdock v. Mayor of Memphis, 87 U.S. (20 Wall.)
590, 635-36 (1875).

 Indeed, the protections afforded by the Texas Constitution may exceed those of the
federal constitution even though the phrasing of a provision is the same or similar in both charters. 
Heitman, 815 S.W.2d at 685. Though the wording of the due course of law guarantee in the
Texas Constitution is slightly different from the Due Process Clause of the Fourteenth
Amendment, the Texas Supreme Court has held that the two clauses are "nearly identical" and
"without meaningful distinction." University of Tex. Medical Sch. v. Than, 901 S.W.2d 926, 929
(Tex. 1995). As a result, the Texas Supreme Court has often followed federal due process
jurisprudence in applying the Texas due course of law provision. Id. However, the similar
meaning of the two clauses does not mean that they provide the same level of protection: federal
due process cases, though persuasive authority, are not binding on the Texas courts. Id.

 With this independent vitality of our state constitution in mind, we hold that the due
course of law provision in the Texas Constitution guarantees Graham the right to a hearing on his
claim of actual innocence. Our reasoning is much the same as that employed by the Court of
Criminal Appeals in Holmes: the execution of an innocent prisoner violates the constitution, and
therefore a claim of actual innocence by a death-row prisoner based on newly discovered evidence
merits a hearing. Holmes, 885 S.W.2d at 397-98. However, we determine that Graham's right
to a due course of law hearing on his claim of actual innocence has been satisfied by the habeas
corpus procedure fashioned for him by the Court of Criminal Appeals in Holmes. Upon a
showing of new evidence that undermines confidence in the jury verdict, Graham will be entitled
to an evidentiary hearing in accordance with statutory post-conviction habeas corpus procedures. 
Holmes, 885 S.W.2d at 398-99. A post-conviction habeas hearing affords the essential requisites
of due process: an evidentiary hearing before a district-court judge, the right to counsel, time to
prepare for the hearing, transcription of the hearing by a court reporter, and written findings of
fact and conclusions of law by the court. Tex. Code Crim. Proc. Ann. art. 11.071, § 9 (West
Supp. 1996). In addition, the Texas Rules of Criminal Evidence apply to the hearing. Id. at §
10. These habeas corpus procedures suffice to protect Graham's due course of law rights under
the Texas Constitution.

 Graham nevertheless argues that he is entitled to an additional hearing before the
Board on his clemency petition, even if he has the option to seek a hearing by means of an
application for habeas corpus. Graham urges that we must consider clemency separately from
habeas corpus because the process afforded in the criminal courts does not affect the process
required for consideration of a clemency petition. We disagree. The cornerstone of Graham's
constitutional right to a due course of law hearing is his claim of actual innocence. Now that the
Court of Criminal Appeals in Holmes has created a judicial vehicle for testing such a claim of
actual innocence, we hold that the Texas Constitution does not afford Graham an additional,
duplicative hearing within the executive-clemency process. By our decision here today we do not
mean to imply that Graham is not entitled to meaningful review of his clemency petition by the
Board, (10) but only that the Texas Constitution does not require the Board to grant Graham a due
course of law hearing where such a hearing is already provided by way of state habeas corpus
procedure.

 Finally, Graham argues that he is entitled to a clemency hearing under the
Administrative Procedure Act, (11) with all the process afforded by the Act. See APA §§ 2001.051-.147. The APA affords a party the right to a hearing before an agency "[i]n a contested case .
. . ." APA § 2001.051. The APA defines a contested case as "a proceeding . . . in which the
legal rights, duties, or privileges of a party are to be determined by a state agency . . . ." APA
§ 2001.003(1) (emphasis added). In a clemency petition, the Board does not determine the
prisoner's rights or privileges. Instead, the Board determines whether a prisoner is entitled to
clemency as a matter of grace (not right or privilege) notwithstanding the judicial determination
that the prisoner has no right to liberty. See Ex parte Anderson, 192 S.W.2d 280, 282 (Tex.
Crim. App. 1946). Because the Board does not determine a prisoner's rights or privileges, a
clemency petition does not come within the definition of a contested case. Therefore, we hold that
Graham is not entitled to a hearing under the APA. 




CONCLUSION
 

 We hold that Graham is not entitled to a hearing on his clemency petition under the
Texas Constitution or the Administrative Procedure Act. Accordingly, we overrule Graham's sole
point of error and affirm the judgment of the district court.



 

 Mack Kidd, Justice

Before Justices Powers, Aboussie and Kidd

Affirmed

Filed: January 10, 1996

Publish
1.   Appellee Lynaugh is the Executive Director of the Texas Department of Criminal
Justice. The remaining individual appellees are the members of the Texas Board of Pardons
and Paroles.
2.   See Ex parte Graham, 853 S.W.2d 565, 566 (Tex. Crim. App.), cert. denied sub nom.
Graham v. Texas, 113 S.Ct. 2431 (1993) (detailing Graham's state habeas corpus challenges).
3.   Graham v. Collins, 122 L. Ed. 2d 260, 269 (1993).
4.   Graham v. Collins, No. 93-2614 (5th Cir. docketed Aug. 15, 1993). The federal district
court denied Graham's petition. Graham v. Collins, 829 F.Supp. 204, 209 (S.D. Tex. 1993).
5.   As defined by appellant and the trial court, a due course of law hearing includes the
following elements:


1. A hearing before an impartial officer;

2. The right to confront evidence and witnesses through cross-examination;

3. The right to present evidence and witnesses, secured by Board subpoena if
necessary;

4. The right to a written summary of the findings and decision of the hearing
officer;

5. The right to representation by counsel;

6. The right to have the hearing transcribed by a court reporter;

7. The right to adequately prepare for the hearing; and

8. Upon Graham's request, the right to have the hearing be open to the
public.
6.   See Kobil, supra, at 607 (discussing the 1923 impeachment of Oklahoma governor J.C.
Walton for selling pardons).
7.   See Kobil, supra, at 607-611 (noting numerous instances of clemency granted on the
basis of public opinion or political pressure without regard to merits of the case).
8.   Graham also contends that the "open courts" provision of the constitution entitles him to
a clemency hearing. See Tex. Const. art. I, § 13. This argument has no merit. The open
courts provision applies only to courts. Id.; see also LeCroy v. Hanlon, 713 S.W.2d 335, 341
(Tex. 1986). The Board is not a court, it is a state agency. See Tex. Const. art IV, § 11;
Tex. Code Crim. Proc. Ann. art. 42.18, § 1 (West Supp. 1996). Furthermore, the right to a
remedy in open court only applies to actions cognizable at common law. Thomas v. Oldham,
895 S.W.2d 352, 357 (Tex. 1995). Clemency is an act of grace and not a legal right
cognizable at common law. Ex parte Anderson, 192 S.W.2d 280, 282 (Tex. Crim. App.
1946).
9.   Article I, section 19 provides: "No citizen of this State shall be deprived of life, liberty,
property, privileges, or immunities, or in any manner disenfranchised, except by the due
course of the law of the land." 
10.  Graham argues that the Board's failure to hold a hearing violates his Texas constitutional
right of "remonstrance" which provides, in relevant part, as follows: "The citizens shall have
the right, in a peaceable manner, to . . . apply to those invested with the powers of
government for redress of grievances or other purposes, by petition, address, or
remonstrance." Tex. Const. art. I, § 27.

 Graham's right of remonstrance guarantees meaningful review of his petition by the
Board by requiring that the Board "consider" it. Professional Ass'n of College Educators v. El
Paso County Community Dist., 678 S.W.2d 94, 96 (Tex. App.--El Paso 1984, writ ref'd
n.r.e.). A government body considers a remonstrance if it stops, looks, and listens to a
grievance. Id.

 However, the right to have the Board consider his petition does not entitle Graham to
any specific due process: "[there is] no requirement that those trusted with the powers of
government must negotiate or even respond to complaints filed by those being governed." Id.;
accord Corpus Christi Ind. Sch. Dist. v. Padilla, 709 S.W.2d 700, 704-05 (Tex. App.--Corpus
Christi 1986, no writ). We hold that the right of remonstrance does not entitle Graham to a
hearing before the Board on his petition for clemency.
11.  Tex. Gov't Code Ann. § 2001.001 et seq. (West 1996) (the "APA").



Executive Director of the Texas Department of Criminal
Justice. The remaining individual appellees are the members of the Texas Board of Pardons
and Paroles.
2.   See Ex parte Graham, 853 S.W.2d 565, 566 (Tex. Crim. App.), cert. denied sub nom.
Graham v. Texas, 113 S.Ct. 2431 (1993) (detailing Graham's state habeas corpus challenges).
3.   Graham v. Collins, 122 L. Ed. 2d 260, 269 (1993).
4.   Graham v. Collins, No. 93-2614 (5th Cir. docketed Aug. 15, 1993). The federa