[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MARCH 19, 2002
THOMAS K. KAHN
CLERK

_____

No. 00-15886

_____

D.C. Docket No. 97-00828-1:CV-JOF

JAMES WILLIE BROWN,

Petitioner-Appellant,

versus

FREDERICK HEAD, Warden,
Georgia Diagnostic Prison,

Respondent-Appellee.

_____

Appeal from the United States District Court for the
Northern District of Georgia

_____

**(March 19, 2002)**

PETITION FOR REHEARING AND
SUGGESTION OF REHEARING EN BANC

Before CARNES, BARKETT and HULL, Circuit Judges.

PER CURIAM:

In his petition for rehearing and suggestion for rehearing en banc, Brown argues, among other things, that we erred in considering as evidence that he had been faking his mental illness the fact that he had sufficient possession of his mental faculties a day or two after the crime to have changed two tires on the car he used in the crime in order to avoid detection. See Brown v. Head, 272 F. 3d 1308, 1314 (11th Cir. 2001). We extend our discussion on that point to explain further why Brown's conduct in attempting to avoid detection by changing the tires on his automobile is relevant and probative evidence concerning his mental condition.

Two psychiatrists testified for the defense at the sentencing stage that Brown was completely out of touch of reality when they examined him, and that irrationality was one of the primary symptoms on which they based their diagnosis. Dr. Dellatorre, who examined Brown after he was arrested and charged, testified Brown was at that time: "out of contact with reality. He was overtly psychotic. He showed a lot of delusional thought, looseness of association, flight of ideas, somewhat confused and disorganized." He further testified that, "[i]n every way he was out of touch with reality," and "was talking about hallucination, hearing voices of demons and the Lord, also the Lord talking to him several times and so

forth." Those symptoms, Dr. Dellatorre testified, were indications of schizophrenia paranoia, which was his diagnosis.

Another defense witness, Dr. Steven Marinkovic, an expert in forensic psychology, gave similar testimony at the sentence hearing, although his diagnosis related to a later point in time, the time when he had first examined Brown five years after the crime. He testified that at that time Brown was "obviously psychotic," and "unable to think clearly. He was hallucinating. He was paranoid at that time." Dr. Marinkovic further testified that Brown was not faking but was genuinely out of touch with reality. Based on the symptoms as he understood them to be, he concurred in the diagnosis of paranoid schizophrenia.

The essence of this mitigating circumstance evidence is that Brown at least periodically, including at and around the time of the crime, was obviously psychotic, delusional, suffering hallucinations, and generally out of touch with reality. It is entirely fair and proper to consider the evidence that strongly contradicts that diagnosis. Among that evidence is the testimony of witnesses about the steps Brown took in a rational, controlled, and goal-oriented effort to hide his involvement in the murder and avoid detection. That evidence goes to the heart of the symptoms upon which the defense's theory of Brown's mental health, which was offered in mitigation, is based. Evidence that Brown knew what was going on and engaged in rational behavior to minimize the chances of his

apprehension and capture is evidence that he was not out of touch with reality. It is evidence which tends to show Brown was faking the crucial (to the diagnosis of the defense experts) symptoms of being delusional, hearing voices, and generally being out of touch with reality and unable to think clearly.

The question is not whether Brown was insane, of course, but whether the mental state mitigating circumstances evidence offered on his behalf in the testimony of the two defense experts was accurate. Any evidence that is inconsistent with those experts' belief that Brown did not know what was happening undermines their testimony. Evidence of rational, goal-oriented, detection-avoiding behavior by Brown contradicts some of the important premises upon which the defense experts' diagnosis of him was based, the ones about him being out of touch with reality, and it thereby undermines their diagnosis. It indicates that, at least to some extent, Brown was faking the symptoms they described and relied upon in reaching their conclusions.

The petition for rehearing filed by Appellant Brown is DENIED. Because no member of this panel, nor any other judge in regular active service on this Court, has requested that the Court be polled concerning rehearing en banc, the suggestion for rehearing en banc is DENIED.

4

BARKETT, Circuit Judge, specially concurring in the denial of the petition for rehearing.

Once again I concur in the result with the understanding that this decision does not address the issue of whether Brown can at another time raise a claim under Ford v. Wainright, 477 U.S. 399, 106 S. Ct. 2595 (1986).

Having considered the petition for rehearing, I would now also note that, although I continue to concur in the result, I would place no reliance on the evidence introduced during the guilt phase of the trial that Brown had two tires changed on his car. Even assuming, as the majority does, that the replacement of the tires tends to show that Brown had a "consciousness of guilt" and that he made "efforts to avoid detection," this evidence does not undermine the defense's mitigation case in any way. The prosecution did not make this argument at trial, and more importantly, nothing in the defense's penalty phase mitigation evidence pertaining to mental illness precludes the possibility that Brown could perform the relatively simple task of having two tires changed on his car, even for the reasons the majority attributes to him. Since this evidence does not tend to contradict anything put forward by the defense, it does not help this Court in deciding whether Brown was prejudiced by his counsel's failure to impeach testimony from which the jury could infer that he was malingering.

5

The defense presented expert testimony that Brown was suffering from paranoid schizophrenia, describing symptoms consistent with that diagnosis, such as delusions and auditory hallucinations.[1]  There is no basis in the record for the assumption that a person suffering from paranoid schizophrenia does not have the cognitive ability to have tires changed on a car, and it appears to be medically inaccurate.[2]  Likewise, there is no testimony anywhere in the trial record to support the assumption that a paranoid schizophrenic who committed a crime would not attempt (however ineffectively) to avoid detection.

The majority now places much emphasis on the testimony that Brown was "out of touch with reality."  In particular, the majority states that "[e]vidence that Brown knew what was going on and engaged in rational behavior to minimize the chances of his apprehension and capture is evidence that he was not out of touch

---

[1]The prosecution's expert expressed no opinion on whether Brown was feigning his mental illness, suggesting only that Brown would be better diagnosed as suffering from posthallucinogenic perceptual disorder, explaining that individuals who have consumed hallucinogenic substances such as LSD and PCP may have symptoms of severe mental illness (such as delusions and hallucinations) up to several years later.

[2]According to the standard reference work on mental disorders, "[t]he essential feature of the Paranoid Type of Schizophrenia is the presence of prominent delusions or auditory hallucinations in the context of a relative preservation of cognitive functioning and affect."  American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 287 (4th ed. 1994) (emphasis added).

with reality." But evidence of a modicum of instrumentally rational behavior does not show that the defendant was not delusional. If someone does what "voices of demons and the Lord" are telling him to do, even in an instrumentally rational way, that does not mean he is not out of touch with reality. In my view, the majority's reasoning is unmindful of the realities of paranoid schizophrenia.

I am also concerned that using the tire changing as an example of evidence of a "consciousness of guilt" and an "attempt to avoid detection" conflates mental illness as mitigation evidence during the penalty phase with insanity as a defense that can defeat culpability during the guilt phase. To be found not guilty by reason of insanity, the defendant must show that he did not have the mental capacity to distinguish between right and wrong. See Ga. Code Ann. § 16-3-3 (2001); Echols v. State, 149 Ga. App. 620, 255 S.E. 2d 92 (1979). But when presented as mitigation evidence during the penalty phase of the trial, the mental illness need not have interfered with the defendant's cognitive capacities to the same extent as that necessary to support a finding of not guilty by reason of insanity. See, e.g., Eddings v. Oklahoma, 455 U.S. 104, 113-15 (1982); California v. Brown, 479 U.S. 538, 545 (1987) (O'Connor, J., concurring); Zant v. Stephens, 462 U.S. 862, 885 (1983); Middleton v. Dugger, 849 F.2d 491, 495 (11th Cir. 1988). The jury could find that Brown's mental illness did not so impair him as to warrant a finding of

7

not guilty by reason of insanity, but still conclude that the delusions and hallucinations that were the product of his mental illness played enough of a role in his thought processes that a penalty of life imprisonment was more appropriate than death.

However, based on the totality of the evidence that was presented at trial and considering the nature of the impeachment evidence sought to be introduced, I concur with the majority's conclusion that Brown was not prejudiced (at least as our precedent defines it) by his attorney's failure to impeach the testimony of White and Tucker.